## WASHINGTON FOSS vs. IRA WHITEHOUSE.

### SAME vs. SAME.

Piscataquis.    Opinion January 1, 1901.

94 491
96 374

94 491
d101 532

94 491
106 409

*Tax. Arrest. Fees. Action. Tort. Assumpsit. R. S., c. 6, § 142.*

1.  When a tax collector has demanded and received from a tax payer more than is due and more than appears to be due according to his lists, he must refund the excess to the tax payer, even though he has paid the amount into the town treasury.

2.  When a tax collector, having arrested a tax payer for non-payment of taxes, exacts as a condition of release a larger sum for fees of arrest and commitment than he is legally entitled to, he must refund not only the excess but the entire sum so exacted.

3.  If the assessors of taxes have jurisdiction to assess the particular tax against the particular person, the tax so assessed will be valid and collectible notwithstanding errors, mistakes and omissions in procedure by the assessors, collector or treasurer.

4.  Declarations, not accompanying official acts, by a tax collector, that he had received money upon a particular tax, are not evidence against the town, nor any subsequent collector, that such money was so received.

5.  When a tax payer has paid to the tax collector the amount of a tax valid and collectible, and the collector has paid the amount as such tax into the town treasury, the tax payer cannot recover the amount back from the town, nor from the collector, in an action of assumpsit, although he made the payment solely to obtain his release from an unlawful duress put upon him by the collector to compel such payment.

6.  When a person who has been subjected to unlawful imprisonment prosecutes to judgment an action of assumpsit to recover back money paid to obtain his release, he cannot maintain an action of tort to recover any other damages resulting from the same imprisonment.

ON REPORT.

The first of these two actions was assumpsit to recover back money paid by the plaintiff, on account of taxes claimed to be due the town of Wellington, and fees paid to the defendant for arresting the plaintiff and committing him to jail.

The second action was trespass, involving the same facts.

By consent of the parties, the case in trespass was reported to

the law court upon the same evidence that was introduced in the action of assumpsit between the same parties, wherein the testimony was taken out at the same term. But as the counsel for the defendant claimed that, if judgment was rendered against him in the action of assumpsit, it could be pleaded in estoppel in this action, it was stipulated by the parties that, if decision should be rendered against the defendant in the action of assumpsit, the defendant should have the same benefit as if judgment in such case had been previously rendered against him and said judgment pleaded as an estoppel in the case.

If, in the second case, the court decided that the action could be maintained, notwithstanding the disposition of the previous case, then the case was to come back for trial for the assessment of damages only; otherwise judgment to be for the defendant.

The case appears in the opinion.

*J. S. Williams*, for plaintiff.

*H. Hudson*, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, FOGLER, JJ.

EMERY, J. The plaintiff Foss was resident, and liable to taxation, in the town of Wellington on April 1, 1892, and has been ever since. That year the total tax assessed against him for all purposes was $27.29. The collector of taxes for that year, and for several years before and after, was Mr. Small, who duly demanded of the plaintiff the payment of his tax. Mr. Small died in 1895 without having settled with the town for the full taxes of 1892. His tax collector's book containing the warrant and lists for that year showed the sum of $5.31 as paid, and a balance of $21.98 as remaining due and unpaid on the tax against the plaintiff. The assessors of 1895 thereupon appointed Ira Whitehouse, the defendant, special collector to collect the unpaid taxes of the year 1892 and committed to him a warrant for their collection and a list of unpaid taxes, upon which list was the name of the plaintiff as owing a balance unpaid of $21.98.

The defendant, armed with his commission, warrant and lists, asked of the plaintiff the balance apparently due on his tax of 1892. The plaintiff informed the defendant that he had paid on this tax to Small, the collector in 1892, $20 more than appeared to have been credited. He paid the defendant what he claimed to be the true balance, $1.98, and took his official receipt therefor, but he expressly refused to pay the remaining $20 or any part thereof. He was afterward applied to several times for the remaining sum alleged to be due, but he always refused to pay upon the ground that he had before paid the amount to Small. At length, on July 1, 1897, the defendant arrested the plaintiff upon the tax warrant and committed him to jail for the non-payment of the balance of the tax. He certified upon the copy of the warrant left with the jailer that the amount of the tax to be paid was $21.98 and that the amount of the costs of arrest and commitment to be paid was $14. The plaintiff thereupon paid both sums to the jailer and was released. The jailer paid these sums to the defendant, who afterward accounted to the town for the plaintiff's 1892 tax as fully paid.

I. The plaintiff subsequently, September 5, 1898, brought against the defendant this action of assumpsit, with the usual money counts of money paid and money had and received, to recover back the sums so paid.

1. The defendant concedes that, in certifying the amount of the tax to be paid, he omitted (inadvertently he claims) to deduct the $1.98 previously paid to him on the tax by the plaintiff, and hence that he should refund that sum with interest. He accordingly submits to judgment therefor in this action.

2. As to the costs of arrest and commitment paid, the defendant contends they cannot be recovered of him in any event, but only of the town. Such fees and charges, however, belong to the collector and not to the town, and the town cannot be held to repay them, at least, until it has received them into its treasury, of which fact there is no evidence. *Briggs* v. *Lewiston*, 29 Maine, 472. They were exacted by the defendant and paid by the plain-

tiff under the duress of actual imprisonment. Unless the defendant had the strict legal right to cause such imprisonment and continue it until the costs were paid, he should refund them with interest. The burden is upon him to show such strict legal right, —to show a legal warrant and lawful procedure under it from beginning to end. If he went beyond his warrant or the law, or stopped short of its full execution,—if he exacted under it anything to which he was not entitled,—all his authority under it vanished, and whatever he acquired under it from the plaintiff for himself he must refund with interest. *Robbins* v. *Swift*, 86 Maine, 197.

He admittedly exacted $1.98 too much. Further, he did not certify the costs in detail as required by law, and we find the sum named and exacted to be somewhat more than the strict legal costs he was entitled to demand. This misconduct, even if inadvertent, deprived him of all right to demand the $14, and of all right to retain it. The defendant does not object to the form of this action and submits to judgment here, if we find him liable at all.

3. The remainder of the sum demanded and received by the defendant, viz. $20, he in effect paid over to the town as the plaintiff's money, paid upon his tax of 1892. As to this item, the plaintiff's first contention is that he had before paid it to the collector of 1892, Mr. Small, and hence the town had no claim against him for it. Of this, however, he has not satisfied us. He never had any official receipt or other voucher for it. He shows no entry of it upon any collector's or treasurer's account. The most he shows, to prove his contention, is that he left with a third party $20 to be paid to the collector on that tax, and that this third party handed the sum to the collector's wife. He fails to show that the wife had any authority to receive it, or ever handed it to her husband, the collector. The wife of an officer is not presumed to be his deputy or agent in official matters. A payment to her is not ipso facto a payment to the officer. True, there was evidence of parol statements by the collector that he had received the $20 from his wife, but those statements were not made as part of any

official res gestae and hence are not competent evidence against the town or the defendant. On the other hand, it seems to us probable that whatever sums did come to the collector's hands were properly credited on plaintiff's taxes for other years.

The plaintiff's next contention is, that the tax of 1892 was not valid against him, by reason of sundry errors and omissions of the assessors and the collectors and particularly in the warrant to the collector. It appears, however, that the assessors for 1892, were duly elected and sworn and were acting as such,—that they had jurisdiction to assess, and did assess the state, county and town taxes for that year, including the tax against the plaintiff. By R. S., ch. 6, § 142, it is expressly provided that no "error, mistake or omission by the assessors, collector or treasurer shall render it [the tax] void." Under this statute the objections urged by the plaintiff against the collector's warrant, or the proceedings of the collector or assessors do not render the tax invalid, it appearing as above stated that the assessors had jurisdiction. *Hemingway* v. *Machias*, 33 Maine, 445; *Rogers* v. *Greenbush*, 58 Maine, 390; *Gilman* v. *Waterville*, 59 Maine, 491; *Hayford* v. *Belfast*, 69 Maine, 63. One objection urged against the assessment is that the assessors assessed $1500 for town charges, while the town only voted $1000 for that purpose. It appears, however, that the town further voted $300 for the poor, and $200 for bridges, and that the assessors simply condensed the three items into one. This at the most was a mere irregularity.

The tax being valid, notwithstanding the errors, mistakes and omissions of the various officers, it was the plaintiff's duty to pay it, and having paid it, even though under the unlawful duress of the collector, he cannot recover it back from the town, although it has gone into the town treasury. It is as much his duty to allow the money to remain in the town treasury as it was to pay it. The town may conscientiously retain it and hence no action of assumpsit can be maintained against the town therefor. *Smith* v. *Readfield*, 27 Maine, 145.

If, under the above circumstances, the plaintiff cannot recover back of the town the money which was paid into the town treasury

upon a valid tax against him, can he recover it from this defendant in this action of assumpsit?

In considering this question all considerations of the tortious character of the defendant's conduct must be laid aside. They are waived and precluded by the nature of the action brought. The plaintiff has based his claim for recovery upon an obligation arising either from an express or tacit promise, or from the requirements of equity and good conscience. He has not shown any promise, express or tacit. Has he shown that equity and good conscience require such payment? We think not.

Whether the money was paid to the defendant, or to the jailer for him, it was in effect paid to the town as a sum due the town. *Briggs* v. *Lewiston*, 29 Maine, 472. Granting that in collecting it, he was guilty of errors, mistakes, omissions and even oppression which might have subjected him to appropriate actions for any damages caused by them, he was still collector of taxes and acting as such. The plaintiff was in duty bound to pay the tax to him. He was the only person authorized to receive it of the plaintiff and receipt for it to him. He did not collect and retain it for himself, but collected it for, and paid it over to, the town, which, as we have seen, is entitled ex aequo et bono to retain it. The defendant cannot recover it back from the town should he be required to pay it back to the plaintiff. The plaintiff's tax would remain paid. He would then have a double satisfaction, and the defendant be twice mulcted, contrary to equity and good conscience. Decisions in actions of trespass do not apply here, since in such actions considerations ex aequo et bono do not enter, while this action of assumpsit is based on such considerations.

In this action, therefore, the judgment for the plaintiff must be for the first two items only, viz. $15.98 with interest.

II. The foregoing, however, is not the end of the discussion. The plaintiff also brought at the same time an action of trespass for the arrest and commitment, but he elected to try his action of assumpsit first. It is stipulated by the parties that the action of assumpsit shall have the same effect upon the action of trespass as

if judgment had been rendered in the former and pleaded in the latter case. We have now to consider that effect.

The plaintiff could have recovered in the action of trespass (assuming the declaration to contain the necessary allegations) all the damages suffered by him in body, mind or estate, including all the items of damage recoverable in assumpsit. He needed to bring this one action only for all his damages, compensatory and punitory. He saw fit, however, to sort out from all the elements of the damage done him three items of money loss and to bring an action of assumpsit for those alone, which action under the stipulation is to be regarded as prosecuted to judgment.

It is common learning that a plaintiff cannot thus split up a cause of action and bring several actions for the different items of damage resulting from the one cause of action. If he does bring an action for some only of such items of damage, he is barred from bringing another action for any other items of damage from the same cause. So, if he brings several actions simultaneously and prosecutes one to judgment first, he cannot proceed with the other actions. As said by this Court in *Ware* v. *Percival*, 61 Maine, 391, a plaintiff cannot "recover part compensation in assumpsit thus waiving the tort, and then resorting to it (the tort) as an existing wrong, recover the residuum of damages in another form of action." As said by the Supreme Court of the United States in *United States* v. *Throckmorton*, 98 U. S. 65: "There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely, 'interest rei publicae ut sit finis litium,' and 'nemo debet bis vexari pro una et eadam causa.'"

The prohibition is not only against twice recovering, but is against twice vexing. Its purpose is to protect the court as well as the defendant. It is unreasonable, therefore not allowable, to require the court or the defendant to go more than once over the same case, the same evidence, where there is any one process which will afford the plaintiff full relief. Thus, where a plaintiff brought an action of trespass de bonis asportatis to recover the value of

goods taken from his close by a trespasser thereon, he was held barred from maintaining an action of trespass quare clausum fregit to recover damages for the breaking and entering the close. *Johnson* v. *Smith*, 8 Johns. 383. So, where the plaintiff brought an action of trover for the value of a horse forcibly taken from him, he was held barred from maintaining an action of trespass to recover damages for the violent trespass. *Hite* v. *Long*, 6 Randolph, 457, (18 Am. Dec. 719). See also *King C. M. & S. & P. Rwy. Co.*, 50 L. R. A. 161, published since this opinion was written.

It is true, that from the original arrest to the final release the defendant may have performed various and different acts against the plaintiff, but these particular acts were only links in the chain of acts constituting the legal wrong of false imprisonment of which the plaintiff now complains. His damages have resulted not from any one disconnected act, but from the one connected, continuous tort, though composed of numerous links. One action will now suffice to determine the whole matter, the arrest, imprisonment, all the illegalities and all the damages. One sum will compensate for all. The plaintiff cannot now twice vex the court and the defendant on account of that arrest and imprisonment. In this respect, the case is analogous to a case of malicious prosecution, which is composed of various acts done at various times and places while the prosecution itself is a whole. Only one action can be maintained for damages resulting from it. The very beginning of a malicious prosecution may be an injury to the reputation of the person against whom the prosecution is begun, but for this injury to his reputation such person cannot maintain an action of slander and also an action of malicious prosecution for other damages. *Sheldon* v. *Carpenter*, 4 N. Y. 579.

In his action of assumpsit the plaintiff has properly caused the court and the defendant to go over the whole case, the law and the evidence, from beginning to end. He cannot require either the court or the defendant to go over it again in another action.

In the action of assumpsit,

<div align="right">

*Judgment for the plaintiff for $15.98
and interest from July 1, 1897.*

</div>

In the action of trespass,

<div align="right">

*Judgment for the defendant.*