BUCK *v.* BUCK.

4-7490                                                    184 S. W. 2d 68

Opinion delivered December 18, 1944.

*David L. Ford,* for appellant.

*R. W. Wilson,* for appellee.

SMITH, J. On May 24, 1943, in an opinion reported in 205 Ark. 918, 171 S. W. 2d 939, we reversed a decree granting appellee a divorce from appellant. The decree

had been awarded upon the allegation and proof of cruel treatment and indignities, under sub-division 5 of § 4381, Pope's Digest. We held that these allegations had been sufficiently proved to entitle appellee to a divorce, but we further held there had been a condonation by a temporary resumption of the marital relation. These allegations had been denied and in addition the defense had been interposed that appellee was not a resident of the state, as contemplated by the first paragraph of § 4386, Pope's Digest, which authorizes a suit for divorce upon proof of: "A residence in the state for three months next before the final judgment granting a divorce in the action and a residence for two months next before the commencement of the action," but we held that the testimony established this residence, and that the testimony to that effect was practically undisputed. In reversing the decree granting the divorce we remanded the cause with directions to dismiss appellee's complaint for want of equity.

Thereafter, on November 23, 1943, appellee filed a second suit for divorce and as ground therefor alleged that appellant had committed adultery with one Lewis Dodge, in the city of Quincy, Mass., in 1943. This was a ground for divorce not alleged in appellee's first suit. The second divorce was granted, and from that decree is this appeal.

A reversal of this decree is urged upon three grounds. First, that appellee was not a resident of this state when he filed this last suit. Second, the allegations of the complaint as grounds for the divorce were not proved. Third, this last suit was barred by the first one. We consider these defenses in the order just stated.

Now appellee was a resident of this state when the first decree was rendered, and the first question presented is whether he had ceased to be when he filed his second suit. Appellee testified at the first trial, as recited in the opinion above referred to, that he expected to reside here permanently, and that he had never changed that intention, but that after obtaining the divorce he decided to visit his mother before enlisting in the United States

Army, and that with that intention, he went, not to Portland, Maine, where he had resided before coming to this state, but to the city of Quincy, in the state of Massachusetts, where his mother resided. He arrived in Massachusetts and offered to volunteer in the United States Army, and was enlisted as a private in the United States Army. He was inducted at Camp Devens in Massachusetts, and was sent to Ann Arbor, Michigan, for training, where he resided until November 24, 1943, when he was discharged on account of physical disability, and he immediately returned to this state. He further testified that while visiting his mother in Massachusetts he had two jobs, one for a week in a lumber yard, and the other for two weeks in a clothing store, but both were part time jobs, and neither was intended to be, or was, of a permanent character.

We do not think appellee lost his status as a resident of this state which he had previously established. In the recent case of *Kennedy* v. *Kennedy,* 205 Ark. 650, 169 S. W. 2d 876, we said: "In the case of *In re Deans,* 208 Fed. 1018, Judge Trieber said that the word 'residence' was an elastic term of which no exact definition applicable to all cases could be given and that it was generally held that whether a party's removal constitutes a change of residence depends on his intention in making such removal, or the *animus manendi.*"

Appellee did leave this state, but he did not return to his former residence in the state of Maine. He visited his mother and as will later appear he had another purpose in making his visit, but it was a mere visit made while contemplating enlistment in the United States Army, a purpose later effectuated; and he did not lose his status as a resident of this state by that enlistment, nor would he have done so however long that service might have continued, unless during its continuance he had formed the intention of becoming a resident of some other state, *Kennedy* v. *Kennedy, supra.* The appellee affirmatively shows he had no such intention as he was employed as a teacher in the Fort Smith High School, which he testified was an employment he preferred, al-

though it was less remunerative than other employment he might have obtained.

As to the ground for divorce, the testimony is to the following effect. Appellant lived in a two-room apartment in the city of Quincy. She occupied one room, and rented the other to one Lewis Dodge, a married man, who was not living with his wife, but was renting this room in October, 1942, and had done so for some days prior thereto. The testimony, which we do not recite, convinces us that Dodge had spent the night of October 4, not in his room, but in that of appellant. The court specifically found this to be a fact, and we think the testimony sustains that finding. A statutory ground for divorce was therefore proved.

The first suit was filed August 21, 1942, and was pending when this act of adultery was committed. The insistence is that as this ground of divorce was not alleged, or relied upon when the first case was heard, it may not now be asserted.

We held in the case of *Ball* v. *Ball,* 189 Ark. 975, 76 S. W. 2d 71, that in divorce actions, as in all others, a judgment is final and conclusive upon all questions which were or might have been litigated, and among other cases there cited to support this statement was that of *Averbuch* v. *Averbuch,* 80 Wash. 257, 141 Pac. 701, Ann. Cas. 1916B, 873, which cites many cases to the same effect.

But the record here does not present the case of one spouse suing another for divorce upon a specific allegation, when other grounds for divorce known to exist were not alleged. It is not contended that appellee was advised of his wife's infidelity when he filed his first case. Indeed the act of which she was found guilty had not been committed when the first suit was filed. In the case of *McKay* v. *McKay,* 172 Ark. 918, 209 S. W. 951, a suit for divorce on the ground of cruel treatment was dismissed, and that decree was pleaded in bar of a subsequent suit brought on the ground of desertion. It was held that a decree dismissing the first suit brought be-

fore the cause of action for desertion had accrued did not bar her subsequent suit on the ground of desertion brought after such desertion had continued for the year required by the statute.

The annotator's note to the case of *Renner* v. *Renner,* 127 A. L. R. 674, states the rule to be that a divorce will not be granted for causes arising after the action was brought. Among other cases cited to support this statement is our own *Spurlock* v. *Spurlock,* 80 Ark. 37, 96 S. W. 753. In this Spurlock case it was said that the cause of divorce must exist before the commencement of the suit, although it was held competent to prove the relation between the defendant and the co-respondent after the suit had been filed, not as a ground for divorce, but as corroborating testimony as to the improper relations before the suit was filed.

Now appellee testified that he received information as to Dodge being a lodger in his wife's apartment on the day before the trial of the first suit, but this information only aroused his suspicion that an improper relation existed between his wife and Dodge, but did not furnish proof of that fact. In her cross-examination at the first trial appellant was asked certain questions which appellee says were intended only to bear upon her income, inasmuch as appellant was asking for an attorney's fee, and an allowance for support. Appellee testified that on the day of the rendition of the first decree he took appellant to dinner and later to the theater, and that his purpose was to learn what relation she had borne to Dodge, and that one of his purposes in going to Quincy, where both appellant and appellee's mother resided, was to satisfy himself on this question, and that it was only after going to Quincy that he obtained the evidence which did prove the improper relations between his wife and Dodge, and that it was upon this information, which he did not possess at the time of the first trial, that he brought his second suit for a divorce. His testimony was that he obtained the information on which he based the second suit in September, 1943, which was subsequent, not only to the date of the rendition of the

first decree, but subsequent also to the date on which this court reversed that decree.

Under these circumstances, we think the court below was correct in holding that the prosecution of the first suit did not bar the right to institute the second one, which suit eventuated in the decree from which is this appeal. That decree must, therefore, be affirmed, and it is so ordered.