Yta C. KRADOSKA

v.

Edna E. KIPP and Sylvester M. Farrington.

Supreme Judicial Court of Maine.

Jan. 29, 1979.

Alfred Feingold (orally), Liberty, for plaintiff.

Eaton, Peabody, Bradford & Veague by Clarissa B. Edelston (orally), Bangor, Roger F. Blake, Belfast, for defendants.

Before POMEROY, WERNICK, DELA-HANTY and GODFREY, JJ.

DELAHANTY, Justice.

Yta C. Kradoska, the plaintiff, appeals from an order entered by the Superior Court, Waldo County, granting defendants' motion for summary judgment. The question presented on this appeal is whether the doctrine of res judicata bars the plaintiff's action. The appeal is sustained in part and denied in part, and the case is remanded to the Superior Court for further proceedings.

Kradoska is the daughter of Stuart M. Farrington and Harriet H. Morrow. Farrington divorced Morrow sometime after Kradoska was born but before he met his death in 1959. At the time of his death, he was seized of four encumbered parcels of land situated in Waldo County in the State of Maine and referred to throughout as parcels "A," "B," "C," and "D." Farrington's estate was insolvent, and the mortgages on the four parcels were foreclosed. Thereafter, defendant Kipp, who claims to have married Farrington sometime after the Morrow divorce, purchased assignments of the mortgages and recorded them in the Waldo County Registry of Deeds. The eq-

uities of redemption over the four parcels were never exercised.

In 1962, Kradoska filed a complaint in the Superior Court, Waldo County, naming Edna Kipp (then Edna Farrington), Sylvester Farrington (offspring of Edna Kipp and Stuart M. Farrington), and Roger Blake (administrator of the estate of Stuart M. Farrington) as defendants. The complaint alleged that Kradoska held equities of redemption over parcels "B" and "C" and that she had tendered a sum equivalent to the principal, interest, and taxes then due but that Edna Kipp had wrongfully refused to accept the tender. Regarding parcel "A," Kradoska alleged that as an heir of Stuart M. Farrington she was entitled to share in the distribution of the proceeds of any sale of that parcel. The complaint demanded that Kradoska be allowed to redeem parcels "B" and "C" and that a constructive trust be imposed on parcel "A" for the benefit of those entitled to share in the distribution of the assets, if any, of Farrington's estate. In the complaint, Edna Kipp and Sylvester Farrington are referred to as the "alleged widow" and the "alleged minor son" of Stuart M. Farrington. Although parcel "D" was not mentioned in the complaint, it was included on a list of the deceased's assets filed with the Probate Court some months after Kradoska filed her complaint. The three defendants were never served.

The absence of any docket entries following the filing of the 1962 lawsuit indicates that Kradoska took no further action in support of her complaint. Accordingly, in October of 1964, almost two and one-half years after it was filed, the Superior Court dismissed the complaint pursuant to M.R. Civ.P. 41(b) for want of prosecution. Notice of the dismissal was sent to plaintiff's then attorney, but no motion to set aside the dismissal was ever made. The validity of the dismissal remains unchallenged to this day.

In August of 1976, fourteen years after the first complaint was filed, Kradoska filed the instant complaint again naming Edna Kipp and Sylvester Farrington as party defendants. On defendants' motion, Roger

Blake, the administrator of the estate, was later joined as a party defendant to the action by the court pursuant to M.R.Civ.P. 19. Like the 1962 edition, the 1976 complaint sought title to land originally held by Stuart M. Farrington. It alleged, in effect, that Edna Kipp was never validly married to Stuart M. Farrington and that Sylvester Farrington was not his legitimate son. It was further alleged that Edna Kipp had fraudulently induced the mortgagees of parcels "A," "B," and "C" to assign their rights under the mortgages to her by falsely representing that she was Farrington's widow and thus entitled to the equities of redemption. This conduct is said to have illegally deprived the estate of its right of redemption over the land. The complaint also alleged that Kradoska had paid Edna Kipp the sum of $2,064.59 in order to redeem the mortgage on parcels "B" and "C" for the benefit of the estate. Finally, the complaint alleged that Kradoska had paid all taxes on parcels "B," "C," and "D" and all debts of the decedent from the time of his death until the present.

In sum, the 1976 complaint claimed that Kradoska was entitled to 1) all four parcels on a theory of intestate succession, 2) parcels "A," "B," and "C" based on Edna Kipp's allegedly fraudulent conduct, and 3) parcels "B" and "C" on a theory of payment.

In their answer, the defendants set up res judicata and laches as affirmative defenses and subsequently moved for summary judgment solely on the issue of res judicata. In granting that motion, the presiding Justice found, first, that there existed "no genuine issue as to any material fact," and, second, that since the issues raised by the 1976 complaint "were litigated, or could have been litigated" in the 1962 lawsuit, the doctrine of res judicata was properly invoked to bar the 1976 complaint.

This appeal followed.

The doctrine of res judicata, as it has evolved in this state, has been applied chiefly in the interests of judicial economy to bar relitigation of a cause of action that has already been resolved by a valid prior judgment; the scope of the bar extends to all issues "tried or that might have been tried" in the prior action. *Bray v. Spencer,* 146 Me. 416, 418, 82 A.2d 794, 795 (1951). *See Hackett v. Eaton,* Me., 389 A.2d 848 (1978); *Thaxter v. Fry,* Me., 222 A.2d 686 (1966); *Cianchette v. Verrier,* 155 Me. 74, 151 A.2d 502 (1959); *Susi v. Davis,* 133 Me. 354, 177 A. 610 (1935). In order for the doctrine to be applied, the court must satisfy itself that 1) the same parties, or their privies, are involved; 2) a valid final judgment was entered in the prior action; and 3) the matters presented for decision were, or might have been, litigated in the prior action.

The first element of the formula—identity of parties—is obviously present. In the 1962 action, as in the case at bar, Kradoska was the plaintiff; Blake, Edna Kipp, and Sylvester Farrington were the defendants.

With regard to the second element—the validity of the prior judgment—the plaintiff initially argues that the "mere filing of a complaint" does not suffice to commence an action because, in her view, under Maine procedure an action does not begin until a defendant has been served. If arguendo we accept this premise, then it follows that no prior action was ever validly begun and therefore the "dismissal" of the complaint in 1964 cannot now serve as the predicate for the defendants' assertion of res judicata.

At the time Kradoska filed her first complaint, the relevant statute, 14 M.R.S.A. § 553, provided as follows:

An action is commenced when the complaint is either *filed with the clerk,* deposited in the mail addressed to the clerk, delivered to an officer for service or deposited in the mail addressed to such officer.[1] (emphasis supplied).

---

1. This statute had previously provided that "suit is commenced when the writ is actually made, with intention of service." R.S. (1954) ch. 112, § 103. Thus, the above-quoted language, which was substituted in 1959, 1959 Me. Acts ch. 317, § 151, changed prior law by desig-

Reflecting the Legislature's determination that a lawsuit may be initiated either by an in-court filing of a complaint or by service of process on the defendant, Rule 3 of the Maine Rules of Civil Procedure has at all pertinent times provided that "a civil action is commenced (1) by service of a summons and complaint, or (2) by filing a complaint with the court." The 1959 edition of the definitive text on the subject of state civil procedure, R. Field & V. McKusick, Maine Civil Practice § 3.2 (1959), discussed both the statute and Rule 3 and stated that an action may be commenced by the filing of a complaint. Thus, in 1962, when plaintiff filed her complaint, those wishing to inform themselves on the matter in question were told by statute, rule, and textual authority that the filing of a complaint would be sufficient to initiate a lawsuit.

◼ Plaintiff's assertion—that the filing of a complaint is a meaningless act unless followed by timely service of process on a defendant—is not well taken. In the first place, this argument flies in the face of the relevant statute and rule, both of which state the contrary in the plainest possible terms. Furthermore, it has long been held that by filing a complaint the plaintiff is deemed to consent to the court's exercise of personal jurisdiction over him to resolve all matters raised by the plaintiff's complaint. As Mr. Justice Stone wrote in *Adam v. Saenger*, 303 U.S. 59, 67–68, 58 S.Ct. 454, 458, 82 L.Ed. 649, 654 (1938), "[t]he plaintiff having, by his voluntary act in demanding justice from the defendant, submitted himself to the jurisdiction of the court, there is nothing arbitrary or unreasonable in treating him as being there for all purposes for which justice to the defendant requires his presence. It is the price which the state may exact as the condition of opening its courts to the plaintiff."[2] *See also Frank L. Young Co. v. McNeal-Edwards Co.*, 283 U.S. 398, 400, 51 S.Ct. 538, 539, 75 L.Ed. 1140, 1141 (1931).

◼ We are also concerned that a holding contrary to that reached today would pave the way for substantial abuses—both foreseeable and unforeseeable—of our court system. To hold, as the plaintiff urges, that a party is free to file a complaint without even subjecting himself to the risk of a dismissal with prejudice would be to undercut the integrity of the judicial process. It would encourage the filing of frivolous and unfounded claims by plaintiffs seeking only to muddy the waters with no risk to their own positions. It would thus add a new and highly nebulous dimension to the law of civil practice, an area that, as much as any other, must possess the attributes of precision and certainty or fail utterly.

Concluding that an action was validly commenced by the filing of the complaint in 1962, we proceed to examine the significance, for res judicata purposes, of the 1964 dismissal of that complaint. In 1964 (as is currently the case), M.R.Civ.P. 41(b)(1) authorized courts to dismiss any action sua sponte "at any time more than two years after the last docket entry showing any action taken therein by the plaintiff . . . ."[3] The Superior Court was therefore acting within the authority granted by Rule 41(b)(1) when, more than two years after the complaint had been filed and no action having been taken, it dismissed the case for want of prosecution.

nating the filing of the complaint as one possible point of commencement for a lawsuit. A fairly recent amendment to the statute, 1971 Me. Acts ch. 544, § 43, made no change in this regard.

2. In *Adam*, the Court upheld as consistent with due process a California procedure that permitted a *defendant* to cross-claim against an out-of-state plaintiff merely by delivering a copy of the cross-claim to the plaintiff's local counsel and without service of process.

3. We note in passing that the 1964 version of this rule specified that no notice need be given to litigants whose cases were vulnerable to dismissal for want of prosecution. Appellant nowhere argues that this lack of notice renders defective the 1964 dismissal of her action and accordingly we do not reach that question. In any event, the record indicates that Kradoska's then counsel received notice shortly after the complaint had been dismissed. No action has ever been taken to set aside that dismissal.

■ The appellant takes the position that a dismissal for want of prosecution cannot serve as a predicate judgment for a subsequent assertion of res judicata. We hold that such a dismissal is sufficient.

In 1964, as is true today, M.R.Civ.P. 41(b)(3) provided as follows:

Unless the court in its order for dismissal otherwise specifies, *a dismissal under [Rule 41(b)] . . . operates as an adjudication upon the merits.* (emphasis supplied).

It is clear that this language reaffirms prior Maine law to the effect that a dismissal for want of prosecution forecloses relitigation of the cause of action. *White v. Savage,* 94 Me. 138, 47 A. 138 (1900). *See also Jacobson v. State Highway Commission,* Me., 347 A.2d 426 (1975); *S.D. Warren Co. v. Fritz,* 138 Me. 279, 25 A.2d 645 (1942); *Davis v. Cass,* 127 Me. 167, 142 A. 377 (1928); 1 R. Field, V. McKusick, & L. Wroth, Maine Civil Practice § 41.5 (1970). The same is true under Rule 41(b) of the Federal Rules of Civil Procedure, the federal counterpart to our rule. *Kotakis v. Elgin, Joliet & Eastern R. Co.,* 520 F.2d 570, 576–77 (7th Cir.), *cert. denied,* 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 389 (1975); *La Societe Anonyme des Parfums LeGalion v. Jean Patou, Inc.,* 495 F.2d 1265, 1275 (2d Cir. 1974); 1B Moore's Federal Practice § 0.409 n.35 (1977–78 Supp.).

Our finding of a valid prior adjudication on the merits does not end the inquiry. We must evaluate the claims pleaded in both complaints and determine whether in 1962 the plaintiff had an opportunity to litigate the matters raised in the instant suit. *Bray v. Spencer, supra* at 418, 82 A.2d at 795; *White v. Savage, supra* at 143–44, 47 A. at 139–40.

■ The first count of the 1976 complaint prayed for a declaratory judgment to determine the rights of the parties in all four parcels of land. Under this count, the plaintiff's theory of recovery was that as the *sole* heir of the deceased Stuart M. Farrington, she was entitled to a fee interest in the land by operation of intestate succession. Edna Farrington Kipp and Sylvester Farrington are referred to as the "alleged" widow and "alleged" son of the deceased. The analogous portion of the 1962 complaint demanded that Kradoska be named constructive trustee over parcel "A" "for the benefit of the person, to wit, the Plaintiff [Kradoska], or persons entitled by intestate succession to the title to [parcel "A"] . . . ." There can be no doubt, after comparing these passages from the complaints, that the question of whether Kradoska is entitled to parcel "A" on a theory of intestate succession must be deemed to have been resolved against her by operation of the prior judgment.

■ The 1976 complaint also lays claim to the other three parcels of land on the same theory of intestate succession. We hold that these claims are also barred by the 1964 judgment. A plaintiff will not be permitted to split his cause of action and pursue each aspect of it in separate lawsuits. *Warren v. Waterville Urban Renewal Authority,* Me., 290 A.2d 362 (1972); *Thompson v. Gaudette,* 148 Me. 288, 92 A.2d 342 (1952); *Pillsbury v. Kesslen Shoe Co.,* 136 Me. 235, 7 A.2d 898 (1939); *Foss v. Whitehouse,* 94 Me. 491, 48 A. 109 (1901); *Ware v. Percival,* 61 Me. 391 (1873); 1 R. Field, V. McKusick, & L. Wroth, *supra* § 18.1. Judicial economy, fairness to litigants, and the strong public interest favoring finality in judicial proceedings demand that a plaintiff present all relevant aspects of his cause of action in a single lawsuit. To allow a plaintiff claiming four separate parcels of land—all of them situated in the same county—to bring four separate lawsuits against the same defendants under a common theory of recovery would outrage all notions of judicial economy. The 1962 complaint itself indicates that plaintiff was aware of the existence of parcels "B" and "C" and an inventory of the assets of Farrington's estate, entered in Probate Court just a few months after the complaint was filed, listed all four parcels. Thus, at the time the 1962 complaint was filed—some three years after Farrington's death—it seems clear that Kradoska knew, or with reasonable diligence could have known, the

contents of the estate and recognized that defendants Kipp and Farrington had at least colorable claims as heirs of the deceased to all items of disposable property in the estate. Having already brought a lawsuit claiming a portion of the estate on a theory of intestate succession, the plaintiff may not at this late date bring suit on the same theory for the remainder.

With regard to the fraud theory of recovery advanced in the 1976 complaint, we are of the opinion that the 1964 judgment can successfully be pleaded only if it can be shown that Kradoska knew of the allegedly fraudulent representations at the time of the filing of the 1962 complaint. That complaint states that Kipp obtained the releases from the mortgagees but makes no mention of any representations that may have been made by Kipp in an effort to procure the assignments. While it is reasonable to assume, as we do above, that Kradoska could with little difficulty have made herself aware of the assets of the estate, it is quite another thing to assume knowledge on her part of fraudulent conduct. The assets of an estate are matters of public record; fraudulent conduct, which depends upon concealment for its success, is far more difficult to discover. A justifiable ignorance of facts which, in retrospect, appear to give rise to a claim for relief will mitigate the res judicata effect of a prior judgment. "[T]he rule prohibiting multiplicity of suits has no reference to a case where the party has no knowledge of his means of redress." *Szombathy v. Merz*, 347 Mo. 776, 784, 148 S.W.2d 1028, 1031 (1941); *Everett Plywood Corp. v. United States*, 512 F.2d 1082, 1087 (Ct.Cl.1975); *Buck v. Buck*, 207 Ark. 1067, 184 S.W.2d 68 (1944); *Developments in the Law—Res Judicata*, 65 Harv.L.Rev. 818, 831–32 (1952). A remand is therefore necessary to discover whether plaintiff was aware of Kipp's representations either before she filed her complaint or within a reasonable time thereafter such that an amendment to her complaint would have been allowed.

If it be found that Kradoska was aware of the fraud now alleged, we think that res judicata can properly be applied. It is well settled that the doctrine of res judicata bars relitigation only of a *cause of action* that has merged into a prior judgment. Restatement of Judgments §§ 1, 2, 47, 48 (1942). The same authorities that formulate the rule in this fashion candidly admit that the slippery phrase "cause of action" all but defies definition. *See, e. g.*, 1B Moore's Federal Practice § 0.410 (1974); *Developments in the Law—Res Judicata, supra* at 824–25. For the reasons set forth below, we conclude that in these special circumstances both complaints make out essentially the same cause of action: the recovery of specific parcels of real property.

In *Warren v. Waterville Urban Renewal Authority, supra* at 367, we quoted with approval the definition of "cause of action" given in 1 R. Field, V. McKusick, & L. Wroth, *supra* § 18.1: "The measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." Comparing the quantum of evidence that would have to be adduced to sustain the 1962 claims of 1) intestate succession and 2) due tender to a foreclosing mortgagee by a holder of an equity of redemption with the evidence necessary to support the current claim of fraud, it becomes apparent that the issue of fraud falls within the ambit of the prior judgment as a theory of recovery that "might have been tried" in the prior suit. A trial based on the 1962 complaint would have explored both the relationship of Edna Kipp and Sylvester Farrington to Stuart M. Farrington and the circumstances surrounding Kipp's acquisition of the mortgagees' interests. Both of these matters are crucial in determining the validity of the fraud claim. If, for example, Kradoska were unable to prove that Kipp's relationship with Farrington was meretricious, then the claim of fraudulent misrepresentation would fail. Had Kradoska been aware in 1962 of the representations she now characterizes as fraudulent, then would have been the time to plead and prove her theory of fraud. Clearly, the "aggregate of connected operative facts that [could have been] handled

together conveniently for purposes of trial" were all present in 1962.

██ In holding that the instant suit comprises the same cause of action as that advanced earlier, we feel it important to emphasize the fact that the 1962 and 1976 complaints, while varying to some degree in the theories of recovery set forth, both seek a common object—title to certain parcels of real property. It has often been held, and we think wisely so, that the doctrine of res judicata demands that a plaintiff seeking legal relief must plead all theories of recovery then available to him; he "cannot splinter his claim and litigate it separately in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim when he had a reasonable opportunity to raise and litigate the same grounds in the former action." *Neeld v. National Hockey League*, 439 F.Supp. 446, 458 (W.D.N.Y.1977); *Northern Pacific Railway Co. v. Slaght*, 205 U.S. 122, 27 S.Ct. 442, 51 L.Ed. 738 (1907); *United States v. California and Oregon Land Co.*, 192 U.S. 355, 24 S.Ct. 266, 48 L.Ed. 476 (1904) (Holmes, J.); *Werlein v. New Orleans*, 177 U.S. 390, 20 S.Ct. 682, 44 L.Ed. 817 (1900); *Stark v. Starr*, 94 U.S. 477, 24 L.Ed. 276 (1877); *McCarthy v. Noren*, 370 F.2d 845 (9th Cir. 1966), *cert. denied*, 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967); *Hatchitt v. United States*, 158 F.2d 754 (9th Cir. 1946).

██ An examination of the above-cited cases indicates that this branch of the doctrine has particular application in successive suits between the same parties over the same real property. In the *Northern Pacif-*

*ic* case, where the plaintiff, having lost its initial suit seeking title to certain real property, brought a second action seeking the same property on a different theory, Mr. Justice McKenna opined:

> If this may be done, how often may it be repeated? If defeated upon the new title, may plaintiff in error assert still another one . . . and repeat as often as it may vary its claim? The principle of *res adjudicata* and the cases enforcing and illustrating that principle declare otherwise. *Northern Pacific Railway Co. v. Slaght, supra* at 133, 27 S.Ct. at 446, 51 L.Ed. at 742. (emphasis in original).

To allow Kradoska to litigate separately each theory of recovery would destroy the purpose of the doctrine of res judicata just as surely as would allowing her to litigate separately the same theory of recovery with respect to each parcel of land. A plaintiff who splits his cause of action either as to relief sought or as to theories of recovery will find that his entire cause of action has merged into the initial judgment. The issues which should have been litigated initially cannot be litigated subsequently.[4]

██ Finally, the 1976 complaint alleges that at some time after Kipp acquired the assignments from the foreclosing mortgagees, Kradoska paid Kipp the sum of $2,064.59 for the purpose of redeeming the note and the mortgage relating to parcels "B" and "C" for the benefit of the estate. As is true with the current allegations of fraud, the 1962 complaint bears no mention of payment. We are in no position to decide whether payment was in fact made at the time the complaint was filed;[5] from

---

4. The defendants urge us to dismiss the fraud claim on two grounds. First, they claim that under 14 M.R.S.A. § 752 the applicable period of limitation has run. They also assert that the fraud allegation is "frivolous." The papers filed in support of the defendants' motion for summary judgment in the Superior Court refer solely to res judicata and make no mention of these other grounds. We are not at liberty to rest a dismissal on grounds not presented to the court below. The plaintiff has not been afforded an opportunity to respond to these arguments and accordingly we reject consideration of them.

5. Although the plaintiff's affidavit in opposition to defendants' motion for summary judgment flatly states, at paragraph three, that the alleged payment took place prior to the date on which the 1962 complaint was filed, we find that this affidavit may not be considered on this appeal. The affidavit, which is liberally sprinkled with argumentative and other improper matter, was prepared and signed by the plaintiff's attorney with no assertion of personal knowledge, all in utter disregard of the plain admonition of M.R.Civ.P. 56(e). That rule provides that all such affidavits must be "made on personal knowledge . . . and shall show

the language of the 1976 complaint, it may have taken place years later. Had the plaintiff made the payment before or soon after the filing of the 1962 complaint, a separate theory of recovery—payment—would then have been available to plaintiff and, as was true of the fraud claim, ought to have been pleaded. Accordingly, the question of when the alleged payment was made must also be remanded for a finding of fact.

In summary, we hold that all claims relative to intestate succession are merged in the prior judgment and that the claims of fraud and payment will also be merged provided the presiding Justice on remand finds that these theories of recovery were available before the 1962 complaint was filed or within such time thereafter that the complaint could have been amended to include them.

The entry is:

Appeal sustained in part and denied in part; case remanded to Superior Court for proceedings not inconsistent with this opinion.

Costs on appeal shall be allowed as follows: one-half (½) to be borne by plaintiff; one-half (½) to be borne by defendants.

McKUSICK, C. J., and ARCHIBALD and NICHOLS, JJ., did not sit.

affirmatively that the affiant is competent to testify to the matters stated therein." *See* *Steeves v. Irwin*, Me., 233 A.2d 126, 130 (1967). Inasmuch as the author of the affidavit lacks the requisite personal knowledge, the affidavit must be disregarded for purposes of the summary judgment motion and this appeal.