STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss                                          CIVIL ACTION
                                                        DOCKET NO. CV-00-339
                                                        TDW-CUM- 11/12/2002

SHELDON HARTSTONE, et al,

        Plaintiffs

    v.                                                  ORDER

FLEET BANK, et al,

DONALD L. GARBRECHT
LAW LIBRARY

DEC 3 2002

        Defendants

Before the court are a motion for summary judgment on behalf of defendant

Fleet Bank, a motion for summary judgment on behalf of defendant Recoll Management

Corp., a joint motion for summary judgment on res judicata grounds on behalf of both

defendants, and at least four other motions: a motion by defendants to strike affidavits

of Sheldon Hartstone and James Wholly submitted in opposition to summary judgment,

a motion in limine by defendants to exclude the testimony of Mr. Wholly, a motion in

limine by defendants to exclude the testimony of Walton Foster, and a motion in limine

by defendants to exclude testimony of James Phillips.

        The court has considered the submissions of the parties, including letters

submitted by plaintiffs' and defendants' counsel respectively on June 3 and June 6,

2002.

        1.      Summary Judgment

                To reiterate the standards for summary judgment as recited in the court's

March 14, 2001 order, summary judgment should be granted if there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. See Handy Boat Service, Inc. v. Professional Services, Inc., 1998 ME 134, ¶ 16, 711 A.2d 1306, 1310 (construing former Rule 7(d)). The facts must be considered in the light most favorable to the non-moving party. E.g., Panasonic Communications & Systems Co. v. State of Maine, 1997 ME 43, ¶10, 691 A.2d 190, 194. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Harkness v. Fitzgerald, 1997 ME 207 ¶ 5, 701 A.2d 370, 372.

At the outset, the court does not conclude that the affidavits submitted by Hartstone and Wholly directly contradict their deposition testimony and therefore denies defendants' motion to strike those affidavits.

2.    Plaintiff's claims

This case centers on a real estate foreclosure auction that was held on September 28, 1992. At that auction certain properties belonging to plaintiff Sheldon Hartstone and Northeast Equities Associates Trust (collectively "Hartstone") were sold pursuant to a mortgage foreclosure action brought by Recoll, which held a second mortgage on one of the properties (known as Granada I-V) and a first mortgage on the other property (known as Granada VI). At the time of the foreclosure Fleet held a first mortgage on Granada I through V. Based on alleged improprieties in connection with the foreclosure sale, Hartstone has asserted claims for fraudulent misrepresentations, negligent misrepresentation, conversion, breach of contractual obligation of good faith,

2

intentional infliction of emotional distress, negligent infliction of emotional distress, fraud and tortuous interference with contract against Fleet and Recoll.

Because this action was not commenced until May 25, 2000, Hartstone relies on the provisions of 14 M.R.S.A. §859 with respect to fraud and fraudulent concealment in order to escape the statute of limitations. On the motions for summary judgment that are now before the court, Fleet and Recoll contend that Hartstone's claims do not present any genuine issues for trial for a variety of reasons. They contend, inter alia, that Hartstone's claims are barred by res judicata, that he released his claims against Fleet in a bankruptcy settlement in September 1993, that Hartstone has not demonstrated that either Fleet or Recoll engaged in any fraud or fraudulent concealment, and that Hartstone's claims for damages are too speculative to proceed.

The court concludes that certain of the defendants' arguments have merit and that they are ultimately entitled to summary judgment dismissing all of Hartstone's claims.

### 3. Res Judicata

The foreclosure sale in question has been the subject of considerable prior litigation. On January 19, 1993 Hartstone filed an objection to the Report of Sale challenging the sale on a number of grounds. Defendants' Statement of Material Facts filed April 2, 2002 ("DSMF") ¶ 55; Aisenberg Exhibit M.[1] On February 24, 1994, Northeast Equities Associates Trust filed a notice that all further proceedings with respect to its objections to the Report of Sale would be held in the Bankruptcy Court. DSMF §62; Aisenberg Exhibit N. Apparently because it is unclear whether any final judgment was ever recorded by the Bankruptcy Court, defendants do not rely upon the

objection to the report of sale as the basis for their res judicata argument on this motion.

In addition to Hartstone's objection to the report of sale, there were additional proceedings in the Bankruptcy Court that related to the September 28, 1992 foreclosure sale. Some of these led to a settlement agreement with respect, inter alia, to the treatment of a $236,516 letter of credit that had been issued by Fleet at the time of the foreclosure sale but that had not been drawn upon. DSMF ¶ 58; Aisenberg Exhibit Q.

As the basis for their res judicata argument in the instant motion, Fleet and Recoll rely upon a separate action commenced in the Superior Court, Penobscot County, by Hartstone individually and in his capacity as Trustee of Northeast Equities Associates, on November 10, 1992. Hartstone v. Fleet Bank and Recoll Management Corp., CV-92-480. That action sought injunctive relief to prevent the delivery of a deed for Granada VI to the high bidder at the foreclosure sale. DSMF ¶ 49, Aisenberg Exhibit AA. An ex parte TRO was denied, and it does not appear that service was ever thereafter made on either Fleet or Recoll. Aisenberg Exhibit AA. The action, however, remained pending with no further action until January 12, 1995, when the docket sheet indicates that the attorneys of record[2] were notified of the court's intent to dismiss for want of prosecution pursuant to M.R.Civ.P. 41(b)(1). No one appeared at a hearing scheduled on February 2, 1995, and on February 5, 1995 the case was dismissed with prejudice pursuant to rule 41(b)(1).

Fleet and Recoll contend that the February 5, 1995 dismissal with prejudice constitutes a prior adjudication that is entitled to res judicata effect and that extinguishes Hartstone's claims in this action. See Kradoska v. Kipp, 397 A.2d 562, 566-567 (Me. 1979) (rule 41(b) dismissal entitled to res judicata effect even in case where

---

[1] References to "Aisenberg Exhibit ___" refer to the exhibits to the April 1, 2002 Aisenberg Affidavit.

[2] The docket sheet indicates that the only attorney who had appeared was the law office of Carl McCue,

4

defendant was not served). Although Hartstone's claims in CV-92-480 were based on the contention that Fleet and Recoll had agreed not to proceed with the foreclosure sale if he met certain conditions, Hartstone does not dispute that the claims in CV-92-480 and the claims in the case at bar both arise out of an "aggregate of connected operative facts that could have been handled conveniently for purposes of trial." Kradoska v. Kipp, 397 A.2d at 568-69. As a result, the doctrine of res judicata (or claim preclusion) is potentially applicable here.

Indeed, under the current formulation in the Restatement of Judgments, where res judicata applies, the claim extinguished "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the [prior] action arose." Restatement, Second, Judgments §24(1) (1980). In this case the transaction at issue in CV-92-480 was the foreclosure sale on September 28, 1992. Res judicata is therefore potentially applicable to all rights of Hartstone that may be asserted with respect to "any part" of that sale. The Restatement also confirms that res judicata is applicable even through only injunctive relief was sought in CV-92-480 and Hartstone now seeks relief in the form of damages on different evidence and different theories. See Restatement, Second, Judgments §25. Accord, Dumont v. Fleet Bank, 2000 ME 197 ¶6, 760 A.2d 1049, 1052.

Correctly conceding all of the above, Hartstone nevertheless opposes res judicata because, he argues, there is a disputed issue of fact as to whether he was aware of the key facts underlying his current challenge to the September 28, 1992 foreclosure sale at a time when he could still have amended the complaint in CV-92-480[3]. See Kradoska v.

---

by Steven J. Lyman, for plaintiff Hartstone individually and as Trustee of Northeast Equities Associates.

[3] Thus Hartstone frames the dispositive issue on defendants' res judicata argument as whether the date on which he concedes he had all the relevant facts (May 26, 1994) was within a reasonable time after the filing of the complaint in CV-92-480 "such that an amendment to the complaint would have been allowed". Hartstone's memorandum in opposition to summary judgment, filed April 23, 2002, at 6.

5

Kipp, 397 A.2d at 568. In this respect Hartstone argues that the complaint in CV-92-480 was subject to dismissal under Rule 3 because no service had been effected within 90 days and therefore he would not have been allowed to amend.

The problem with this argument is that Hartstone never sought to amend his complaint in CV-92-480. Because no responsive pleadings had been filed, Hartstone could have amended his complaint without leave of court after he discovered the facts on which he now bases his claims. Thereafter, if service had been made and the defendants had raised Rule 3, the court sees no obvious reason why a judge in CV-92-480 would not have listened to an argument from Hartstone that he had just discovered evidence of fraud in May of 1994 and therefore should be entitled to proceed with an action that he had previously allowed to lie dormant.

Significantly, if Hartstone had tried to amend the complaint in CV-92-480 and that action had nevertheless been dismissed under Rule 3, that dismissal would have been without prejudice. See Fries v. Carpenter, 567 A.2d 437, 439 (Me. 1989). Indeed, in May of 1994 Hartstone could have chosen not to seek to amend his complaint in CV-92-480 and could simply have dismissed CV-92-480 without prejudice and thereby preserved his options to proceed with this action. Instead, he allowed CV-92-480 to languish to the point where it was dismissed with prejudice. Under the circumstances of this case, where there was no bar to the amendment of the complaint in CV-92-480 at the time when Hartstone concedes he had enough facts for file suit, the dismissal with prejudice in CV-92-480 operates to preclude his claims in this action.

In light of the conclusion recorded above, the court need not discuss defendants' other arguments in detail but will observe that, in its view, alternative grounds also exist upon which defendants' motion can be granted as to the major portion of Hartstone's claims.

4.  Release

On September 7, 1993 Hartstone, individually and as Trustee of Northeast Equities Associates, signed a settlement agreement releasing Fleet Bank, with certain specified exceptions

> from any and all claims, demands, obligations, liabilities, indebtednesses, breaches of contract, breaches of duty or any relationship, acts, omissions, malfeasance, cause or causes of action, debts, sums of money, accounts, compensations, contracts, controversies, promises, damages, costs, losses and expenses, of every type, kind, nature, description, or character, and irrespective of how, why or by reason of what facts, whether heretofore now existing, or hereafter dismissed or which could, might or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated ... which Releasors, or any one or more of them, ever had, now have, or which may result from the existing or past state of things, from the beginning of the world to the date hereof, against or related in any way to Lenders ....

DSMF ¶ 28: Aisenberg exhibit Q at 9-10 (emphasis added). The settlement agreement further expressly acknowledged that the matters released "are not limited to matters which are known or disclosed" and stated that the Releasors acknowledge that "further matters now unknown to them" may give rise to causes of action that are "presently unknown, unanticipated, and unsuspected," and that the Releasors "nevertheless hereby intend to release, discharge, and acquit Lenders from any such unknown causes of action." Id. at 11.

In the court's view, this release specifically forecloses – as against Fleet – Hartstone's attempt to assert claims based on facts that he asserts he only uncovered

7

after September 1993.[4] However, Hartstone correctly points out that release is an affirmative defense that was not raised in Fleet's answer. Fleet, on the other hand, notes that the settlement agreement containing the release was specifically authorized in a September 10, 1993 bankruptcy order (Aisenberg Exhibit R). Moreover, that order specifically provided that the Bank was released from all claims arising out of the $236,516 letter of credit. Id. at 6. Under these circumstances, Fleet argues that it adequately preserved its right to rely on the release by raising a res judicata defense.

On this issue the court is inclined to the view that, with respect to the general language in the release, release should have been raised as an affirmative defense but with respect to the claims that were specifically released in the bankruptcy court order, the defense has been adequately preserved. Under the circumstances, Fleet may have an argument that its reliance on the general language of the release comes as no surprise to Hartstone and that it should therefore be entitled to amend its answer to assert release as an affirmative defense. Because the court has concluded that the dismissal in CV-92-480 is entitled to res judicata effect, further proceedings on this issue are unnecessary.

5.    Fraud and Fraudulent Concealment

Both defendants argue that Hartstone has not raised a genuine factual dispute on the issue of whether he is entitled to take advantage of 14 M.R.S.A. section 859.

With respect to Hartstone's fraud claims themselves, the undisputed facts are that Hartstone did not attend the September 28, 1992 auction, did not obtain a bidding prospectus, and was not the recipient of any alleged misrepresentations made to

_____

[4] The court also rejects Hartstone's contention that his claims against Fleet here fall into exception (b) on page 10 of the release.

bidders at the auction. DSMF ¶¶ 13, 16, 18, 19. Because reliance is an indispensable element of any fraud or misrepresentation claim, Hartstone's fraud and misrepresentation claims must be dismissed.

It is not enough to argue, see Hartstone Affidavit ¶ 3, that Hartstone relied on defendants' obligation to conduct the foreclosure sale in a commercially reasonable manner. A breach of that obligation does not give rise to a cause of action for fraud. Nor is it sufficient for Hartstone to argue that third parties may have relied on misrepresentations by the defendants and that the ultimate result was that Hartstone was damaged. Hartstone has offered no authority for the proposition that a party who was not the direct or indirect recipient of a misrepresentation can sue for fraud. Absent evidence that Hartstone himself relied on any misrepresentations by defendants, his fraud and misrepresentation claims must fail.

Hartstone can still assert his other claims if he can demonstrate that there is a factual dispute as to whether one or more of the defendants fraudulently concealed those causes of action until May 26, 1994. In this connection, Hartstone is obliged to come forward either with evidence that defendants "actively" concealed material facts or with evidence that a special relationship existed such that defendants had a duty to disclose the relevant facts. Harkness v. Fitzgerald, 1997 ME 207 ¶ 6, 701 A.2d at 372. Hartstone concedes that no special relationship consists in this case, see, e.g., DSMF ¶ 39, so his claim depends on evidence of "active concealment."

On this issue Hartstone points to two alleged instances of fraudulent concealment. The first of these involves certain allegedly misleading language in the Report of Sale that did not disclose that there was only one bidder for Granada I-V and Granada VI. See Plaintiffs' Statement of Material Facts ("PSMF") ¶9. To the extent that the report of sale constituted fraudulent concealment, however, the existence of only

9

one bidder was known to plaintiff in January 1993 when he filed an objection to the Repot of Sale. DSMF ¶ 55; Aisenberg Exhibit M ("upon information and belief there were not 16 registered bidders at the auction but only one"). Thus, the report of sale is not alone sufficient to extend the statute of limitations until May of 1994.

The other alleged instance of fraudulent concealment involves defendants' alleged withholding of the bidders' registration cards. On this issue Hartstone's deposition testimony demonstrates the existence of a factual dispute as to whether defendants declined at one point to provide him with the bidder registration cards. See Hartstone Dep. 86-87, annexed as part of Exhibit 18 to the McKinley Affidavit. Whether this could constitute fraudulent concealment for purposes of 14 M.R.S.A. § 859 is less clear. Because no special relationship existed, defendants had no duty to disclose information to Hartstone. Moreover, the existing case law discusses "active concealment" in terms of misrepresentation rather than in terms of withholding information. E.g., Harkness v. Fitzgerald, 1997 ME 207 ¶¶6-7, 701 A.2d at 372 (suggesting that reliance by the plaintiff must be shown). On the other hand, if a defendant is in the sole possession of information that would reveal the existence of a cause of action and intentionally withholds that information despite a plaintiff's demand for same, this might meet the Restatement's definition of fraudulent concealment. See Restatement, Second, Torts §550.

Because the court is prepared to grant summary judgment on res judicata grounds, the fraudulent concealment issue need not be finally decided. Absent res judicata, in the court's view, defendants are at a minimum entitled to summary judgment on Hartstone's fraud and misrepresentation claims for the reasons set forth above.

6.    Speculative Damages

Hartstone's damages, except for his claims for emotional distress,[5] depend upon two alternative theories. The first is that, because of the misrepresentations of the defendants as to the bid conditions, other potential bidders were precluded from seeking to purchase Granada I-V and Granada VI. Hartstone has acknowledged, however, that the question whether the alleged misrepresentations as to bid conditions actually affected the actions of other bidders or the price at which the properties were sold is "all speculation". Hartstone Dep. 1/31/02 at 100. See id. at 101-04.

Hartstone's other theory entitling him to damages is that if the stated bid conditions had been enforced, there would have been no qualified bidders for Granada I-V. In that case Recoll would have had to bid in Granada I-V and would then, according to affidavits offered by Hartstone, have been prepared to negotiate a "possible" resale of Granada I-V to Hartstone. Wholly Affidavit of 4/22/02 ¶ 5; Hartstone Affidavit of 4/22/02 ¶ 4. However, those affidavits indicate that whether such a sale would ever have actually materialized is conjectural. As a result, it is difficult for the court to conclude that Hartstone has demonstrated disputed facts for trial with respect to his claims for economic damages.

In his papers Hartstone relies on the Law Court's decision in Cadle Co. v. LCM Associates, 2000 ME 73, ¶¶ 8-9, 749 A.2d 150, 152-153, for the proposition that a party objecting to irregularities at a foreclosure sale is not required to prove prejudice. This is

---

[5] To the extent that issues exist as to the legal validity of Hartstone's emotional distress claims, defendants have not raised those issues in the pending motions.

11

absolutely correct in a case where a mortgagor is objecting to a deficiency judgment. This does not mean, however, that when a mortgagor is not seeking to avoid a deficiency judgment[6] but is affirmatively seeking damages, a mortgagor is excused from the well-settled rule that damages based on speculation and conjecture will not be awarded. E.g., Snow v. Villacci, 2002 ME 127, ¶9, 754 A.2d 360, 364-65.

This constitutes an alternative basis to grant summary judgment to defendants on Hartstone's claims for economic damages.

The entry will be:

For the reasons herein stated, defendants' motions for summary judgment are granted and the complaint is dismissed. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a)

Dated: November 11, 2002

Thomas D. Warren
Justice, Superior Court

---

[6] In this case the docket sheet in the underlying foreclosure action, Aisenberg Exhibit S, demonstrates that the defendants' request for a deficiency judgment was withdrawn on February 3, 1994.



Date Filed ___05-25-00___ ___CUMBERLAND___ Docket No. ___CV 00-339___
County

Action ___DAMAGES___

SHELDON L. HARTSTONE
NORTHEAST EQUITIES ASSOCIATES
TRUST

FLEET BANK OF MAINE
RECOLL MANAGEMENT CORPORATION

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| WILLIAM K. MCKINLEY, ESQ, PO BOX 9711, PORTLAND ME 04104-5011 | JOHN HELLMAN, ESQ, (Fleet Bank/Recoll Mgt PO BOX 9545 PORTLAND, ME 04112 DAVID AISENBERG, ESQ LOONEY, COHEN, REAGAN & AISENBERGH 109 STATE ST BOSTON, MA 02109   617-371-1050 |

Date of