Donald ROY, of Waterville, Kennebec County, State of Maine, Plaintiff, Appellant,

v.

The CITY OF AUGUSTA, MAINE, et al., Defendants, Appellees.

No. 82–1942.

United States Court of Appeals, First Circuit.

Argued April 4, 1983.

Decided July 28, 1983.

Jed Davis, Augusta, Me., with whom Jim Mitchell and Jed Davis, P.A., Augusta, Me., was on brief, for plaintiff, appellant.

Charles E. Moreshead, Augusta, Me., with whom Linda B. Gifford, and Sanborn, Moreshead, Schade & Dawson, Augusta, Me., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from the district court's dismissal of a civil rights action for failure to state a claim upon which relief can be granted. We hold that the action is barred as against defendant City of Augusta by the operation of res judicata but that the complaint should not have been dismissed as against the individual defendants as it states a possible claim against them under 42 U.S.C. § 1982.

Because this appeal is before us from a dismissal of the complaint, we construe the facts and pleadings in the light most favorable to the plaintiff. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam). On September 20, 1976 the city council of Augusta, Maine, granted plaintiff-appellant, Donald Roy, a license to operate a pool and billiard room at 79–81 Cony Street, Augusta, premises which he owned subject to a mortgage. On April 1, 1977 he applied for a renewal of the license. His application was denied following a hearing on April 11, 1977. Roy then commenced an action in the Kennebec County Superior Court seeking a declaratory judgment, injunctive relief, and reversal of the council's actions. On June 3, 1977, the Superior Court determined that the council had failed to provide a transcript of the hearing as required by state law. 1 Me. Rev.Stat.Ann. § 407.1, and ordered the council to hold a new hearing.

A second hearing was held on June 9, 1977, and the council again voted not to renew Roy's license. The council based its decision upon a city ordinance requiring that licenses shall "be granted only if the location is in such a place that it will not disturb the peace and quiet of a family." The council found that large numbers of young people had assembled outside Roy's establishment and had disturbed the peace and quiet of the area. There was no evidence, however, that activities within the pool hall had disturbed the neighborhood.

Roy once again brought suit in the Superior Court, and this time the court affirmed the council's decision. Roy appealed from that judgment to the Maine Supreme Judicial Court. On June 2, 1978 that court ruled that the city's ordinance violated the state's licensing statutes, 8 Me.Rev.Stat. Ann. §§ 1 & 2,[1] insofar as it enabled the city to deny Roy a license on account of activities that did not occur within his establishment. *Roy v. Inhabitants of the City of Augusta,* 387 A.2d 237 (Me.1978) (hereinafter "*Roy I*"). On June 14, 1978, in accordance with the Maine Supreme Judicial Court's directions, the Superior Court ordered the city officers to renew Roy's license. On June 21, 1978 the city clerk issued Roy the 1977–78 license he had originally sought which, however, had expired on May 1, 1978.

Still unlicensed in spite of his victory in the Maine Supreme Court, Roy was advised by defendant Charles Moreshead, the city's counsel, that he should apply for a current license. Roy did so, and a hearing was held on his new application on July 17, 1978. Roy alleges that he had been forced by then, however, to convey the premises to the mortgagees in lieu of foreclosure, as he had been unable to pay his bills because of his inability to run his business. In consideration for conveyance of the premises, Roy says he received an oral right of first refusal to the premises and assurances that he might be able to regain ownership of or obtain a lease to the premises upon receiving a valid license.

Roy's interest in the property was discussed at the July 17 hearing. According to

---

1. 8 Me.Rev.Stat.Ann. § 1 states:
   Unlicensed alleys and billiard rooms
   Whoever keeps a bowling alley, shooting gallery, pool, bagatelle or billiard room without a license forfeits $10 for each day that such alley, gallery or room is so kept.
   8 Me.Rev.Stat.Ann. § 2 states:
   Municipal officers may license suitable persons to keep bowling alleys, shooting galler-

   ies, pool, bagatelle and billiard rooms therein, in any place where it will not disturb the peace and quiet of a family. Such licenses expire on the first day of May after they are granted, unless sooner revoked. The municipal officers shall set a reasonable fee for the issuance of licenses required by this chapter.

Roy, defendant Moreshead stated at the hearing that a police officer, P. Thomas Baker, was interested in running a pool hall at 79–81 Cony Street. The council then voted to deny Roy a license, because he lacked a sufficient property interest in the premises and because of an intervening conviction for aiding in the illegal sale of liquor.

On July 18, 1978 Roy once again brought an action in the Superior Court, and on August 11, 1978 the court ordered the city to issue a valid license that would not expire until May 1, 1979. Such a license was issued on August 11.

According to the present complaint, the valid license came too late. It is alleged that on July 25, 1978, while the Superior Court action was pending, the new owner of 79–81 Cony Street told Roy that he was no longer willing to rent the premises to Roy because the city's actions on July 17 "evidenced an intent to keep [Roy] from opening a billiard room at that location, regardless of what the Courts might order." On August 15, 1978 Baker applied for a license to operate a billiard hall at 79–81 Cony Street. This license was granted on August 21, 1978, after a hearing at which Roy participated. Roy then filed yet another action in Superior Court seeking to have Baker's license declared void. The Superior Court found against Roy. This judgment was affirmed on appeal by the Maine Supreme Judicial Court because of the fact that Roy lacked a property interest in the premises. *Roy v. Inhabitants of the City of Augusta,* 414 A.2d 215 (Me.1980) (hereinafter "*Roy II*").

On June 6, 1980 Roy filed the instant action in district court charging that the City of Augusta and eight of its officers violated 42 U.S.C. § 1983 by depriving him of his property without due process of law.[2] On June 27, 1980 defendants filed a motion to dismiss arguing, inter alia, that the com-

plaint failed to state a claim upon which relief could be granted and that the action was barred by res judicata. The district court, adopting the recommendations of a magistrate, dismissed the action for failure to state a claim. Roy appealed.

## I. RES JUDICATA

▮ The first issue we consider is whether the instant action is barred under principles of res judicata.[3] We hold that it is as to the City of Augusta, but that it is not as to the individual defendants.

▮ It is well established that general principles of res judicata apply in civil rights actions. *See, e.g., Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (Title VII); *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (collateral estoppel applies in section 1983 actions); *Isaac v. Schwartz,* 706 F.2d 15 (1st Cir.1983). In determining the preclusive effect of a state court judgment, federal courts must look to the state's law. *Id.* at 16. We therefore turn to the Maine law of res judicata in order to determine whether Roy's Maine litigation bars the present action.

▮ For the doctrine of res judicata to be applied in Maine "the court must satisfy itself that 1) the same parties, or their privies are involved; 2) a valid final judgment was entered in the prior action; and 3) the matters presented for decision were, or might have been, litigated in the prior action." *Kradoska v. Kipp,* 397 A.2d 562 (Me.1979). In the instant case there is no question that final judgments were entered in the various Maine court actions. Whether the other conditions were met, however, requires a closer look.

▮ In *Kradoska,* the court stated that whether the "matters presented for decision

---

2. Roy also alleged that he was denied equal protection of the laws and that defendant conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985. Roy's counsel, however, agreed to dismiss the section 1985 claim during a hearing before the magistrate.

3. Although the district court did not base its decision on the doctrine of res judicata, we may affirm its dismissal of the complaint so long as that judgment is valid on any ground. *Riley v. Commissioner,* 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940).

were, or might have been litigated in the prior action" depends upon whether the same cause of action was before the court in the prior cases. *Id.* at 568. Under Maine law, "the measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." *Id. quoting* 1 R. Field, V. McKusick & L. Worth, *Maine Civil Rights Procedure* § 41.5 (1970). *See also Restatement (Second) of Judgments* § 24, Comment A (1982). Here, all of the operative facts alleged in the present complaint, except one, were before the state court in *Roy II.*[4] The court in *Roy II* considered the fact that Roy had initially been denied a license, had litigated that denial, had won a judgment, had been given an expired license, and had lost his hall prior to receiving a valid license. The only presently alleged "fact" which, for obvious reasons, was not then before the *Roy II* court was that Roy was to be denied relief in that very case. While that "fact," insofar as it demonstrates that Roy was unable to regain his property is material to his current constitutional claim, it does not distinguish the two actions for purposes of res judicata. It often happens that claims do not achieve constitutional stature until a state court has rejected them. Yet as we stated in discussing a similar situation in *Lovely v. Laliberte,* 498 F.2d 1261, 1263 (1st Cir.), *cert. denied,* 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974), "state courts, too, are guardians of the federal constitution." Where a party should reasonably foresee that an adverse state court judgment will create a constitutional issue, that issue should be argued before the state court. Where it is not, the party is barred by principles of res judicata from later raising the constitutional claim against the same parties in a federal section 1983 action.

Roy argues that even if the operative facts in *Roy II* are the same as those now before us, he should not be barred from bringing this action because the remedy he now seeks—damages—is different from the remedy he sought in the earlier case. This argument is without merit. Under modern principles of res judicata, a party cannot split his claim by first seeking one type of remedy in one action and later asking for another type of relief in a second action. *See Restatement (Second) of Judgments* §§ 24 & 25. The Maine Supreme Judicial Court has accepted that view. It has stated:

> A plaintiff will not be permitted to split his cause of action and pursue each aspect of it in separate lawsuits.... Judicial economy, fairness to litigants, and the strong public interest favoring finality in judicial proceedings demand that a plaintiff present all relevant aspects of his cause of action in a single lawsuit.

*Kradoska v. Kipp,* 397 A.2d at 567 (citations omitted). Here, the transactions complained of were the same in both cases. Therefore, the fact that Roy sought a different remedy in the earlier action does not preclude the application of res judicata here.[5]

Res judicata, however, only bars actions against those parties who were in-

---

4. Because we find that the same cause of action was presented in *Roy II* as in the instant case, we need not consider the possible res judicata effect of the earlier Maine cases.

5. Roy argues that res judicata should not apply here because he was barred by the state law of sovereign immunity from seeking damages from defendants under state law, *see* 14 Me. Rev.Stat.Ann. §§ 8103 & 8111, and it was not clear at the time he filed *Roy II* that cities could be liable under section 1983 for money damages. We do not think that excuses Roy's failure to raise his constitutional claims. For one thing, it had been clear since *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, was decided in 1978 that cities were parties within the meaning of section 1983. Therefore, Roy could have raised his constitutional claims under section 1983 as a reason for obtaining the equitable relief he sought in *Roy II.* Moreover, Roy could have sought section 1983 damages against the individual defendants, although there may have been some problems with his doing that since they appeared in *Roy II* in their official capacity, *see infra.* And in any event, even if Roy could not have made out a separate section 1983 claim, that still does not excuse his failure to notify the court of the constitutional implications of its state law holding.

volved in the earlier suit. Two of the parties in this case, the city's attorney, Charles Moreshead, and councilman Richard Griffin were not defendants in the prior action. The action consequently is not res judicata as to them. *See Landrigan v. City of Warwick,* 628 F.2d 736 (1st Cir.1980). The other individual defendants did appear in the earlier action, but only in their official capacities. In the present action they are named in their individual capacities. Under well-established rules of res judicata, recognized in Maine, an action brought against an individual in one capacity does not bar a later action brought against the same individual in a different capacity. *Lander v. Arno,* 65 Me. 26 (1876). *See also Restatement (Second) of Judgments* § 36; 1B *Moore's Federal Practice* ¶ 0.411[3] (2d ed. 1982). We therefore hold that res judicata does not bar the present action as against the individual defendants but does bar it against the city.

## II. SECTION 1983 CLAIM

██ The district court dismissed Roy's complaint for failure to state a claim under section 1983. A complaint, however, "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Applying that admonition, we hold that the district court erred in dismissing the complaint against the individual defendants when and for the reasons it did.

██ Roy's complaint alleges a deprivation of his property without due process of law in violation of 42 U.S.C. § 1983. He argues that the defendants' grant of an expired, invalid license in response to the court order in *Roy I,* following their initial refusal to renew the license, deprived him of a property right, and ultimately his business, without due process. Mere violations of state law do not, of course, create constitutional claims. *See Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct.

345, 74 L.Ed.2d 385 (1982). For Roy's claims to reach constitutional magnitude and be cognizable under section 1983, Roy must allege, and ultimately prove, that defendants acted under color of state law, that he was deprived of constitutionally protected property because of defendants' actions, and that the deprivation occurred without due process of law. *Parratt v. Taylor,* 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981).

██ There is no question that defendants acted under color of state law. And Roy's interest in renewing the license may have been "property" within the meaning of the fourteenth amendment. Property rights, although protected by the Constitution, are created by state law. *See Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). While the state licensing statute in question does not appear on its face to create a mandatory entitlement, *see* note 1, *supra,* the Maine Supreme Judicial Court in *Roy I* held that Roy had the right to a renewed license. 387 A.2d at 237. The judgment in *Roy I* would seem to have conferred upon Roy a property interest in the license. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982) ("The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' ").

The harder question is whether he was thereafter denied the license without due process. After the city council initially voted to deny Roy's application for a license renewal, Roy brought suit in the state court system. Although Roy won a judgment in his favor in *Roy I,* defendants did not give him a valid license. Instead, they gave him an expired license—presumably the one he had initially sought but which, a year later, had expired. Although Roy returned to the Superior Court and secured an order to issue a current license, the remedy came too late, as he had by then lost ownership and control of the pool hall premises due to his economic plight resulting from the shutdown of his business. In *Roy II* the Maine Supreme Judicial Court stated that there

was "no legitimate reason" for the city's giving Roy an expired license and that "the administrative procedures adopted by the city materially prolonged and unnecessarily complicated its dispute with Roy." *Roy II,* 414 A.2d at 219. The Maine court could not, however, assist Roy in reacquiring his business since by then Roy lacked any interest in the premises and another party, Baker, had received the license.

If all this case involved were a claim that the Augusta city officials had refused to renew a pool hall license in violation of Maine law, we could see no possible federal claim. We said in *Creative Environments, Inc. v. Estabrook,* 680 F.2d at 822, 833 (1st Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982), that even the outright violation of state law by local officials "is a matter primarily of concern to the state and does not implicate the Constitution"—absent "fundamental procedural irregularity, racial animus, or the like." In *Creative Environments,* as here, the dispute concerned locally issued permits and approvals, the denial of which were subject to review by the state judiciary. If by portraying such disputes as the taking of property without due process, every disgruntled applicant could move them into the federal courts, even when the state provided adequate procedures, any meaningful separation between federal and state jurisdiction would cease to hold and forum shopping would become the order of the day. Thus we re-emphasize that the mere fact the individual defendants may have refused to renew Roy's permit for reasons untenable under Maine law gives rise to no federal right. Roy received minimal due process in the form of a hearing before the council; additionally the Maine courts were available to provide judicial review and redress.

Nor, by itself, did the inability of the Maine courts to save Roy's business demonstrate that Roy's license was taken without due process. An unfortunate but unavoidable aspect of all litigation, federal as well as state, is that it takes time and money. To the extent Roy's loss resulted simply from the fact that he ran out of the economic ability to hold on to the premises before a license was secured, we see no federal constitutional question. Roy does not assert, nor could he, that he was constitutionally entitled to full judicial review before his original license expired. The practice was apparently to issue licenses annually, and after Roy was denied renewal by the city council, the old license had expired. The burden was then on Roy to seek review and reversal of the council's denial in the state courts. During this period he could not operate his pool hall, and of course could therefore earn nothing from it. But we know of no constitutional requirement rendering Maine's procedures in this regard unconstitutional. Roy received a hearing before being denied renewal. He was constitutionally entitled to no more.

Thus for reasons stated, we see no grounds for a due process claim on the theories just discussed. However, there remains one further aspect of Roy's case which, we think, may give rise to a federal claim. In *Roy I* the Maine Supreme Judicial Court declared that Roy was entitled to a license under state law. He was nonetheless denied the fruits of his victory by what Roy alleges were the entirely arbitrary actions of the defendants, who took it on themselves to disregard and subvert the Maine court's mandate. Ordered to give Roy a license, defendants gave him instead a useless, expired license. Arguably, this amounted to the taking of his property (the license) without due process, since—on the theory Roy presents—the defendants simply flouted the mandate of the state court, rendering the court's ruling in Roy's favor and the state's process a nullity. Roy's subsequent efforts to secure state court redress were technically successful—the state court agreed that he should be granted a current license—but by then Roy had lost the premises, having run out of funds, and the state court could afford no practical redress.[6]

This, at least, is the scenario Roy seeks to prove, and we think he must be afforded

---

**6.** In dismissing this case, the district court relied upon *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). We do not think that *Parratt* is directly controlling here.

some chance to do so. This theory is to be distinguished from claims that local officials erred in not issuing licenses. Even when errors are extreme, they do not implicate the basic adequacy of the state's *process*, especially when correction is available by the state's judiciary. Here, however, defendants allegedly disregarded the judgment of the state's highest court, thereby finally pushing Roy to the wall. They finally succeeded in "taking" his property in derogation of the process afforded by the state. If we accept this version as true, the taking was a taking without due process not because the Maine courts did not afford Roy due process, but because defendants frustrated that process.

We emphasize as a crucial element of Roy's due process claim that he must prove that defendants' refusal to issue a license was totally without reasonable sanction under the *Roy I* judgment. If their issuance of an expired license should turn out to have been a reasonable, even if incorrect, response to *Roy I*, defendants would have official immunity, *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and, apart from that, withholding of the license would not have been a subversion of the state's procedures and the demands of due process. However, if defendants withheld the license in defiance of the *Roy I* judgment, the act was an act of lawlessness. Where its result was to leave Roy without the license the Maine court said he was entitled to, and ultimately to destroy his business, we think he might be able to recover damages under section 1983.[7]

We emphasize that we hold only that Roy has alleged sufficient facts to survive a motion to dismiss for failure to state a claim. It will be up to the district court to determine whether defendants' actions were sufficiently egregious under the circumstances to rise to the level of a constitutional violation. In particular, defendants' withholding of a current license must be shown to have been so plainly contrary to the *Roy I* judgment as to have been a subversion of the state's process. But given the unique facts pleaded, including in particular the criticisms of defendants' action by the Maine court itself, we think Roy has made a sufficient showing to be entitled to go forward against the individual defendants and attempt to prove that his injury was due not merely to the law's delay and the councillors' errors but to defendants' deliberate disregard of the state's fundamental process. *See Developmental Disabilities Advocacy Center, Inc. v. Melton*, 689 F.2d 281, 289 (1st Cir.1982).

Affirmed in part, vacated in part, and remanded for further proceedings not inconsistent with this opinion.

---

In *Parratt* the Supreme Court held that the negligent deprivation of property does not violate due process where the state provides an adequate post-deprivation remedy for the loss. In the instant case, Roy alleges that he was deprived of his property because the defendants intentionally disobeyed the state court's order. Moreover, because of the state's grant of absolute immunity to the defendants, 14 Me. Rev.Stat.Ann. § 8111; *McNally v. Mokarzel,* 386 A.2d 744 (Me.1978), Roy appears unable to receive a damage remedy under state law.

**7.** A further consideration in reaching this result is that Maine has granted absolute immunity to defendant officials for refusal to grant licenses. *See* note 6, *supra; see also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982).