Robert W. DECKER,
Plaintiff, Appellant,

v.

HILLSBOROUGH COUNTY ATTORNEY'S OFFICE, et al.,
Defendants, Appellees.

Robert W. DECKER,
Plaintiff, Appellant,

v.

Paul McDONOUGH, etc., et al.,
Defendants, Appellees.

Nos. 87–1725, 87–1839.

United States Court of Appeals,
First Circuit.

Submitted March 11, 1988.

Decided April 22, 1988.

Robert Decker, pro se.

Larry M. Smukler, Asst. Atty. Gen., Stephen E. Merrill, Atty. Gen., Concord, N.H., and Maria Verbeck, on brief for defendants, appellees Linda S. Dalianis, the Hillsborough County Superior Court, and the State of N.H.

Lawrence S. Smith, Diane L. Perin, and Ransmeier & Spellman, Concord, N.H., on brief, for defendants, appellees Manchester

Police Dept., City of Manchester, and Thomas King, Chief of Police.

Robert G. Whaland, and McDonough & O'Shaughnessy, P.A., Manchester, N.H., on brief for defendant, appellee The City of Manchester.

David Horan, Asst. Co. Atty., Manchester, N.H., on brief for defendants, appellees Paul McDonough, Paul Gagnon, Hillsborough County, and the Hillsborough County Attorney's Office.

Before BREYER, TORRUELLA and SELYA, Circuit Judges.

PER CURIAM.

The district court dismissed plaintiff's two pro se complaints on various grounds including judicial immunity and failure to state a claim. The heart of plaintiff's complaints was that defendants had seized and then failed to return plaintiff's personal property despite, plaintiff alleged, court orders that various items be returned. Plaintiff has appealed from the dismissal. We review the background as gathered from the pleadings. We do not consider new matter not contained in the pleadings and asserted for the first time on appeal in plaintiff's main brief or rebuttal brief. *Glaros v. Perse,* 628 F.2d 679, 681 (1st Cir.1980).

Plaintiff's first complaint named as defendants the county attorney for Hillsborough County, an assistant county attorney, the Hillsborough County Attorney's Office, Hillsborough County, the Manchester Police Department, and the state of New Hampshire. The complaint alleged that on or about January 20, 1983, a state judge issued a search warrant, the validity of which, plaintiff said, was "still a matter of serious question." As a result of the warrant, Manchester police conducted a "fishing expedition" and seized property from plaintiff's residence. Some seized items were not even listed in the warrant. The next day at least two more search warrants issued and further "fishing expeditions" occurred. Only a small portion of the seized items was used at trial. Plaintiff was found not guilty on June 26, 1984 at a

jury trial over which Superior Court Justice Linda Dalianis presided. (Justice Dalianis was not a named defendant in the first complaint, but was sued in a second action, to be subsequently discussed, that plaintiff brought.) After that, plaintiff's property should have been immediately returned, plaintiff claimed, as it was not contraband or otherwise illegal. It was not returned, however, forcing plaintiff to file a motion for return of property. Without holding any hearing at which plaintiff was present (plaintiff was incarcerated), Justice Dalianis, on March 1, 1985, "abused her judicial discretion" by ordering some of the property destroyed. The rest was ordered returned to plaintiff. Plaintiff received no written notice of the March 1, 1985 order until June 14, 1985, whereupon he filed a motion for preservation of all property. Plaintiff's mother attempted to obtain the property ordered by the court to be returned from the County Attorney's office and the Manchester Police Department, but only received "put-offs," "run-arounds," and excuses from defendants.

After further time had passed and defendants had not complied with the March 1, 1985 order, plaintiff filed further motions (another motion for return of property, motion for transcript, and motion for inventory) on July 15, 1985 aimed at obtaining his property. No hearing was held until November 13, 1985 at which time, plaintiff said, Justice Dalianis allotted him insufficient time to argue his motions, kept trying to cut him short, and seemed hostile to plaintiff. An order issued that day requiring defendants, specifically defendant McDonough, the assistant county attorney, to deliver certain of the property to plaintiff's mother, to provide her with an inventory by November 30, 1985, and to produce the rest of the property in court by December 13, 1985. Defendants neither delivered any property to plaintiff's mother nor produced any in court, plaintiff claimed.

On October 6, 1986, plaintiff filed more motions (for transcripts, for continued preservation of property, and to hold defendants in contempt). Justice Dalianis issued another order on October 31, 1986 stating that assistant county attorney Mc-

Donough had failed to comply with the March 1, 1985 and November 13, 1985 orders and ordering County Attorney Paul Gagnon personally to oversee compliance with the court's order. Justice Dalianis failed to rule on all of plaintiff's outstanding motions. Plaintiff's mother made further attempts to retrieve the property, but without success. Plaintiff amended his contempt motion to seek a jury trial and damages. A hearing was put off, at defendants' request and over plaintiff's objection, to February 12, 1987. What happened thereafter is not revealed in the pleadings. On February 24, 1987, plaintiff filed his first complaint in federal court.

On April 24, 1987, plaintiff filed his second complaint in federal court. In addition to the defendants named in the first complaint were the Manchester Chief of Police, the City of Manchester, Justice Dalianis, and the Hillsborough County Superior Court. The substance of the second complaint was essentially the same as that of the first. The second complaint indicated for the first time what type of property had been seized and ordered destroyed—photographs (apparently of unclothed persons), costumes, a make-up kit, and books.

With respect to the first complaint, a magistrate ruled that to the extent plaintiff was complaining about actions judges had taken, the judges were entitled to absolute immunity and, as for the rest of the complaint, plaintiff was still pursuing state judicial remedies and had not been denied due process. The district court accepted the magistrate's recommendation and dismissed the action. The magistrate recommended the second complaint be dismissed on res judicata grounds, and the court also accepted that recommendation. Plaintiff has appealed from these dismissals.

We turn to plaintiff's various contentions.

1. Fourth Amendment.

Plaintiff apparently may be attempting to challenge not only defendants' failure to return plaintiff's property to him but also the validity of the January 20 and 21, 1983 searches and seizures. If plaintiff unsuccessfully attacked the searches and seizures on fourth amendment grounds at his state criminal trial, then plaintiff would be collaterally estopped from relitigating that matter now. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Sanders v. Frisby*, 736 F.2d 1230 (8th Cir. 1984) (plaintiff who unsuccessfully litigated motion to suppress is collaterally estopped from challenging search and seizure in § 1983 action). But, as it is not entirely clear from the complaints whether the validity of the searches and seizures was litigated in state court, we do not rest our decision on this basis.

■ We conclude instead that plaintiff has failed to allege sufficient facts to state a fourth amendment claim. Plaintiff alleged that the validity of the search warrants was a "matter of serious question" and that the searches were "fishing expeditions." But these are subjective characteristics and state no facts outlining why the searches and seizures might be illegal. Nor do plaintiff's additional allegations that the warrant "bore hand written additions" or that all the seized property was not designated in the warrant suffice. The fourth amendment does not require that the warrant be entirely typewritten. And items not listed in a warrant may be properly seized if, for example, their seizure is authorized by the plain view doctrine.

■ To the extent plaintiff is claiming that the subsequent destruction of his property violates the fourth amendment,[1] see *Hudson v. Palmer*, 468 U.S. 517, 528 n. 8, 104 S.Ct. 3194, 3201 n. 8, 82 L.Ed.2d 393 (1984), plaintiff is not entitled to relief in this court. Plaintiff's remedy, if he believed that Justice Dalianis's destruction order violated the constitution, was to seek review within the state court system and, if

---

1. It is not clear from the pleading whether the property has actually been destroyed or whether the lower state court has only ordered its destruction, but that that act has not yet taken place. If the latter, and if plaintiff is asking this court to step in and interfere with the state proceeding, we conclude plaintiff is not entitled to relief. See *Pennzoil Company v. Texaco, Inc.*, — U.S. —, — — —, 107 S.Ct. 1519, 1525–29, 95 L.Ed.2d 1 (1987) (abstention).

unsuccessful, further review from the United States Supreme Court. Lower federal courts may not sit in review of state court orders. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970); *Fortune v. Mulherrin,* 533 F.2d 21, 22–23 (1st Cir.), *cert. denied,* 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 143 (1976).

2.  Justice Dalianis.

Plaintiff complains that Justice Dalianis failed to accord him a hearing before ruling on his motion for return of property, improperly ordered some of his property destroyed, unduly delayed scheduling hearings on plaintiff's motions, gave plaintiff inadequate time to argue on November 13, 1985, failed to rule timely or at all on various of plaintiff's motions, and failed to swiftly hold defendants in contempt to enforce compliance with the order of return.

■ Judges are absolutely immune from damages liability for actions taken in a judicial capacity unless the judge has acted "in the clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). Plaintiff contends that Justice Dalianis's actions—for example, her failure to accord him a hearing before ordering some of his property destroyed—were unconstitutional and consequently plaintiff believes the actions were beyond the judge's jurisdiction since a judge does not have the authority to violate the constitution. Hence, plaintiff argues, the justice is not entitled to immunity.

■ Plaintiff misperceives judicial immunity. A judge does not lose immunity because an action is erroneous, malicious, in excess of his authority, or disregardful of elementary principles of procedural due process, as long as the judge had jurisdiction over the subject matter before him. *Stump v. Sparkman,* 435 U.S. at 356, 359–60, 98 S.Ct. at 1104, 1106. Here, there is no question that Justice Dalianis had jurisdiction to entertain plaintiff's motion for return of property and other motions. *See* N.H.Rev.Stat.Ann. 595–A:6 ("Upon application by a ... defendant ... the court ...

may ... order returned to the rightful owners any ... property of evidential value, not constituting contraband.... All other property seized ... shall be returned to the owner of the property, or shall be disposed of as the court or justice orders....."). Consequently, regardless whether the rulings Justice Dalianis made in the course of those proceedings were right or wrong, Justice Dalianis is entitled to absolute immunity from damages liability.

3.  Deprivation of property without due process.

The district court ruled that plaintiff could not be said to have been deprived of property without due process because plaintiff was still pursuing state judicial remedies and hence might eventually obtain the property he sought. The deprivation was not without "due process," the court apparently felt, because the state had provided plaintiff with procedural means to redress defendants' allegedly wrongful withholding of plaintiff's property.

■ To the extent plaintiff is complaining about defendants' failure to return his property to him immediately upon or soon after his acquittal, we readily agree with the district court. Plaintiff apparently would rely on N.H.Rev.Stat.Ann. 595–A:6 for his contention that he was entitled to the property upon acquittal without further demand. Even if plaintiff's reading of that statute were correct, defendants' violation of that statute would not constitute a deprivation of property *without due process* since New Hampshire provided plaintiff with a judicial procedure through which to assert his property rights. *Parratt v. Taylor,* 451 U.S. 527, 543, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981) (loss occurring as the result of unauthorized failure of state agents to follow established state procedure does not constitute a violation of fourteenth amendment due process if the state provides plaintiff with a means by which to redress the deprivation).

■ The question with respect to defendants' actions after March 1, 1985, which

allegedly were in disobedience of that and subsequent court orders, might arguably be different. Superficially, *Roy v. City of Augusta*, 712 F.2d 1517 (1st Cir.1983), might seem to support plaintiff's contention that defendants' alleged disregard of the state court rulings deprived him of procedural due process. In *Roy*, a state court had ordered defendants to issue plaintiff a license to operate a pool hall. Instead of issuing a current license, defendants responded to the state court order by issuing an already expired license. Although eventually, in response to another state court order, a valid license was issued, the relief came too late to be effective as by then plaintiff had lost the premises on which he had intended to conduct the pool hall and state law granted defendant's absolute immunity from damages liability. Plaintiff contended defendants' issuance of an expired license had deliberately flouted the mandate of the state court thereby depriving him of property without due process. We concluded that the earlier state judgment had appeared to confer on plaintiff a property interest in the license and that if, as plaintiff claimed, defendants, acting arbitrarily, had taken it on themselves to disregard and subvert the state court mandate, then their actions arguably amounted to the taking of property without due process. *Id.*, 1523–1524. Consequently, we concluded plaintiff's complaint should not have been dismissed for failure to state a claim.

Somewhat similarly to *Roy*, it might be argued here that the March 1, 1985 order of return recognized and confirmed plaintiff's property interest in various of the seized items and that defendants' subsequent allegedly flagrant disobedience of the court order and refusal to return the items was a denial of due process resulting in a continuing property deprivation.

Despite some similarities, we conclude plaintiff is not entitled to relief under *Roy*. First, it is not apparent that plaintiff can not ultimately achieve some effective relief—the return of his property—in the state court system. While plaintiff complains about delay, litigation takes time, and the delays described in the complaints do not amount to procedural due process

violations. *See Alton Land Trust v. Town of Alton*, 745 F.2d 730, 732 (1st Cir.1984) (2½ year litigation; passage of time is an inevitable part of procedural due process). Nor are we aware of any state statute analogous to the one in *Roy* granting defendants absolute immunity. *Cf.* N.H.Rev. Stat.Ann. 29–A:2 (defense and indemnification of county officers and employees); N.H.Rev.Stat.Ann. 99–D:2 (defense and indemnification of state employees). Moreover, as was recognized in *LaMoureux v. Haight*, 648 F.Supp. 1169, 1174–75 (D.Mass.1986), *Roy* has been undercut by *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In *Hudson*, a prisoner alleged that a prison official had intentionally destroyed plaintiff's noncontraband personal property, thus depriving him of property without due process. The Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." This was because "the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy," and hence the deprivation could not be said to be without due process unless no effective state remedy were available. *Id.*, 533, 104 S.Ct. 3204.

Plaintiff's situation is governed by *Hudson v. Palmer*. Essentially, plaintiff is claiming that defendants intentionally and wrongfully deprived him of his property. But remedies, which plaintiff has been pursuing, are available to plaintiff in the state court. New Hampshire has not yet refused to provide plaintiff with a remedy. Hence, plaintiff has failed to state a claim for deprivation of property without due process.

Plaintiff failed to state any federal claim upon which relief may be granted. Consequently, plaintiff's actions were properly dismissed.

*Affirmed.*