USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2140
 M. JOE HERWINS,
 Plaintiff, Appellant,
 v.
 THE CITY OF REVERE, ET AL.,
 Defendants, Appellees.

No. 97-2141
 M. JOE HERWINS,
 Plaintiff, Cross-Appellee,
 v.
 JAMES J. MAROTTA,
 Defendant, Cross-Appellant.
 ____________________

 APPEALS FROM THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Morris E. Lasker, U.S. District Judge]

 Before
 Torruella, Chief Judge,
 Boudin and Stahl, Circuit Judges.

 Ira H. Zaleznik with whom Lawson & Weitzen, LLP was on brief
for appellant James J. Marotta.
 Stephen Schultz with whom McGowan, Engel, Tucker, Garrett &
Schultz was on brief for plaintiff.

December 17, 1998

 
 

 BOUDIN, Circuit Judge. M. Joe Herwins, the plaintiff in
the district court and cross-appellant here, owned a building at
53A Walnut Avenue in Revere, Massachusetts, in which rooms or
apartments were rented to tenants. On February 24, 1993, the
defendant-appellant James J. Marotta, a board of health inspector
for defendant-appellant the City of Revere, arrived to inspect the
building, prompted by a complaint as to the smell of gas or a lack
of heat (there is some dispute as to which). It is undisputed that
one of the tenants was utilizing a gas stove to provide heat.
 Marotta reported to his superior--City Health Agent
Michael Pepe--that there was no heat in the building, and later in
the day Marotta returned to do a further inspection with other city
officials. Following the inspection, Marotta reported to his
superior, and a letter was drafted to Herwins specifying a large
number of alleged violations and concluding that the building was
"unfit for human habitation and must be vacated forthwith." SeeMass. Regs. Code tit. 105, 410.750, 410.831(D) (1941).
 Marotta immediately served the letter upon Herwins and
the tenants, who then vacated the building. Seven months later, in
September 1993, Herwins hired an expert to make a private
inspection of the building. The expert concluded that many of the
alleged violations did not exist and that the violations, even
taken together, did not endanger any of the tenants. The city
responded to the expert's report by stating that the main reason
for the shutdown was the lack of heat. At a subsequent meeting
with city officials in October 1993, the city plumbing inspector
told Herwins that in order to reopen Herwins would have to provide
a separate bathroom for each unit. The meeting ended in
disagreement between the parties.
 Herwins subsequently took an appeal to a state board to
review the plumbing inspector's determination. The appeal
apparently depended on whether the structure was a building
existing prior to the enactment of the plumbing code and whether
Herwins had nonetheless agreed to comply with the code. The appeal
was rejected in May 1994. Herwins did not seek further review of
this decision in court and did not seek to reopen the building. 
Instead, in November 1995, he filed the present two-count complaint
in district court against Marotta and the City of Revere asserting
violation of his constitutional rights under 42 U.S.C. 1983.
 In each count, Herwins charged that Marotta and the City
of Revere had violated his right to procedural due process under
the Fourteenth Amendment. In the first count, Herwins charged that
the violation was the closure of his building without prior notice
or hearing. The second count charged that the City of Revere had
violated procedural due process by failing to advise him, in the
letter directing closure of the building, that he had a right to
undertake an administrative appeal from that determination.
 Herwins requested a jury trial on the first count of the
complaint. On the second count, both sides agreed that the issue
should be tried by the district judge because there were no
contested issues of fact; the City of Revere conceded that the
letter had not included notice of right to appeal even though such
notice was required under state regulations. Mass. Regs. Code tit.
105, 410.832(B)(2). Defendants' request for summary judgment on
both counts was denied.
 In May 1997, count I was tried to a jury. There was
conflicting testimony about the events on the day of the closure,
including a dispute as to whether the heat in the building was off
when Marotta initially inspected the building and reported to the
Health Agent that there was no heat. Pertinently, Herwins
testified that Marotta had said to Herwins, at the time that
Marotta left the premises in the morning, that he was going to shut
down the building if it was the last thing that Marotta did.
 This last remark created a link to testimony by Herwins
concerning his prior relationship with Marotta and the City of
Revere. Over defendants' objection, the jury was told that Marotta
had inspected the building in May 1990 and filed civil citations
charging Herwins with operating a rooming house without a licence
and for structural problems relating to the stairs and porch of 53A
Walnut Avenue; that the city had later filed criminal charges
against Herwins, prompted in part by Marotta; and that in February
1992, the city had discontinued the criminal proceedings.
 Ultimately, the jury returned a verdict on count I
against both Marotta and the City of Revere. In answer to specific
questions, the jury found that in closing down the building Marotta
had falsely or recklessly reported that there was an immediate
danger to the tenants. The district court set aside the verdict
against the City of Revere but refused to set aside the verdict
against Marotta. The jury's determination as to damages--$55,000
in compensatory damages, $5,000 for punitive damages--was allowed
to stand as to Marotta.
 Thereafter, the district court decided count II under
Fed. R. Civ. P. 52. The court ruled as a matter of law that
Herwins had no claim under count II against either Marotta or the
City of Revere because failing to give him notice of his appeal
rights was not a denial of due process but only a violation of
state law. On motion by Herwins, the district court also awarded
attorney's fees in the amount of just over $95,000 plus costs of
almost $9,000.
 Following post-trial motions, Marotta filed an appeal to
contest the verdict and award of damages and attorney's fees
against him. Herwins cross-appealed, challenging the grant of
judgment as a matter of law to the City of Revere on count I, the
trial judge's decision in favor of both defendants on count II, and
the denial of his motion for a new trial on the issue of damages. 
Herwins also sought review of the award of attorney's fees,
claiming that the amount ordered was inadequate.
 On this appeal, the dispositive issues are ones of law
and are considered de novo. See Liberty Mut. Ins. Co. v.
Commercial Union Ins. Co., 978 F.2d 750, 757 (1st Cir. 1992). We
will assume arguendo that the jury properly found on count I that
Marotta's prompting of the closure letter was without basis and
that he knew this to be so or acted recklessly. But we conclude
that under controlling precedent this does not give rise to a
constitutional claim for denial of procedural due process because
state law offered adequate remedies. We address this issue first,
turning thereafter to count II and to the award of attorney's fees.
 The first count of Herwins's complaint alleged that the
closure of his building through emergency procedures violated his
right to procedural due process under the Fourteenth Amendment. 
Massachusetts law permits an inspection to trigger an immediate
shutdown of a building where an emergency exists threatening health
or safety, subject to later opportunity for review at the building
owner's behest. Mass. Regs. Code tit. 105, 410.831(D), 410.850. 
Marotta argues that due process required that he be provided a
"pre-deprivation" hearing and, alternatively, that post-deprivation
remedies were not adequate.
 Due process normally requires notice and opportunity for
"some kind of hearing," Memphis Light, Gas and Water Div. v. Craft,
436 U.S. 1, 19 (1978), prior to a final deprivation of liberty or
property. See id.; Parratt v. Taylor, 451 U.S. 527, 540 (1981). 
This generalization is a very loose one. There are deprivations so
limited that no prior "process" is due, e.g., a Terry stop, seeTerry v. Ohio, 392 U.S. 1 (1968); and conversely, there are
requirements of due process in some instances where the "property"
interest is pretty thin by conventional standards. See, e.g.,
Goldberg v. Kelly, 397 U.S. 254 (1970).
 Whether the opportunity needs to be furnished before the
seizure or whether a post-seizure opportunity is sufficient depends
on the circumstances. Where feasible, the opportunity (for obvious
reasons) is expected to be pre-deprivation, see Cleveland Bd. of
Educ. v. Loudermill, 470 U.S. 532, 542 (1985), but this is not
always feasible. Two situations in which a post-deprivation
opportunity is sufficient were set forth in Parratt v. Taylor, 451
U.S. 527, 539 (1981) (footnote omitted), as follows:
 [E]ither the necessity of quick action by the
 State or the impracticality of providing any
 meaningful predeprivation process, when
 coupled with the availability of some
 meaningful means by which to assess the
 propriety of the State's action at some time
 after the initial taking . . . satisf[ies] the
 requirements of procedural due process.

 No one can seriously doubt that emergency conditions may
exist (e.g., a severe fire hazard) that would warrant a peremptory
shutdown of a residential building. Herwins does not dispute that
"quick action" may be required for such emergencies, nor does he
specifically challenge the general standards set forth in
Massachusetts law for determining when emergency closures should be
ordered. Of course, the jury found that there was no emergency in
this case, but that shows only that Marotta's substantive decision
was wrong; he was not required to hold a hearing before declaring
an emergency.
 One might ask why this should matter: after all, as a
result of Marotta's substantive decision, Herwins suffered a
wrongful shutdown of his building. But the city provided all of
the procedural protection it could in requiring a prior hearing for
closures based on non-emergency violations. Where an official
errs in declaring an emergency, the only feasible procedure is a
post-deprivation remedy, which the city also provided. See Hudsonv. Palmer, 468 U.S. 517, 531-533 (1984).
 Of course, the law might have developed so as to hold the
official liable under the Fourteenth Amendment for his own mistake
even if the state had done all it could. Absent Marotta's mistake,
Herwins would have had a prior hearing before closure. But the
Supreme Court has ruled that in such cases there is no denial of
procedural due process, even by the official, so long as the state
provides an adequate means of redress. The Supreme Court has held
this both where the official's action is negligent, Parratt, 451
U.S. at 543-44, and where it is deliberate, Hudson, 468 U.S. 536-
37.
 But for this limitation, federal suits might be brought
for countless local mistakes by officials in administering the
endless array of state laws and local ordinances. Often these
errors have a procedural dimension--e.g., a tax lien imposed after
a misaddressed notice of taxes due--and inflict temporary harm or
inconvenience. Assuming that the state remedies are themselves
adequate, it has seemed sufficient to leave such random and
individual errors to be corrected by state courts and agencies.
 Herwins's claim is not aided by his repeated reliance
upon Zinermon v. Burch, 494 U.S. 113 (1990). There, Florida law
permitted an individual to be admitted as a voluntary patient in a
mental hospital, and to waive his right to release on request,
without any determination that the person was competent to make
such a waiver. The Supreme Court held that when Zinermon was
wrongly detained, through the use of this flawed procedure, the
state might be subject to liability for a denial of procedural due
process.
 In distinguishing Parratt, the Supreme Court said that
the Florida procedure of admissions and waiver was not restricted
to emergencies. And, since the procedure was itself authorized by
state law, Zinermon's admission was not a "random and unauthorized"
act of an individual employee or an "unpredictable" departure from
state law. Zinermon, 494 U.S. at 136. Confinement of patients not
competent to consent was easily foreseeable and pre-deprivation
screening could feasibly be provided in non-emergency cases. Id.
 By contrast, Massachusetts does provide for an
opportunity to object before a building is shut down except in
emergencies. While state law led Marotta to invoke summary
closure, his "authorized" use of the summary power would not
violate the Constitution, and improper use is exactly the kind of
"random and unauthorized" conduct that the local government had no
duty (and indeed no practical way) to forestall through a pre-
deprivation hearing--a procedure itself inconsistent with true
emergency conditions. Cf. Hudson, 468 U.S. at 533.
 Herwins's alternative argument is that the city did not
provide an adequate post-deprivation remedy. It is undisputed that
Herwins could have challenged the shutdown by appealing the order
to the City of Revere Board of Health and, if dissatisfied with its
decision, could have appealed the ruling to the state courts. 
Mass. Regs. Code tit. 105, 410.850, 410.860. This is a
conventional regime for redressing administrative error, making it
unnecessary for us to consider whether there exists an alternative
judicial remedy of common law certiorari (which Marotta asserts
exists and Herwins disputes).
 Herwins objects that the appeal to the Board of Health
had to be filed within seven days and that the failure to give him
notice of this option--as required by state law, Mass. Regs. Code
tit. 105, 410.832(B)(2)--rendered the post-deprivation remedy
inadequate. He also says that during the seven days following the
emergency closure he was otherwise occupied with dealing with the
consequences of the closure (assisting tenants, draining the
plumbing system).
 The state's failure to provide a landlord with express
notice that he can seek review may violate state law but does not
render the review remedy constitutionally inadequate. In most
civil matters, citizens are expected to ask about the method to
protest or appeal an initial administrative action (or to hire a
lawyer). An experienced landlord like Herwins would hardly suppose
that no opportunity existed to challenge the emergency shutdown
order, even if he was not himself a lawyer (in fact he was).
 As for the seven-day time limit, it appears that all that
was required was the filing of a written petition. See Mass. Regs.
Code tit. 105, 410.850. Quite possibly, there are circumstances-
-perhaps present here, although we doubt it--where it is simply
infeasible for an appeal to be noticed within seven days. If the
state then refused to permit a belated appeal thereafter, this
might raise a question whether state remedies were adequate, cf.Roy v. City of Augusta, 712 F.2d 1517, 1523-24 (1st Cir. 1983), but
Herwins made no such effort to appeal even belatedly.
 When one steps back, Herwins plainly could have taken an
immediate appeal on the emergency shutdown and shown that the heat
had been turned back on and that the other violations were not
threatening to health. This would have meant a brief inconvenience
to Herwins and the tenants but it would likely have led to a prompt
cancellation of the emergency closure. The idea that Herwins could
ignore this state provided procedural remedy, and then create a
federal case and collect $55,000 damages for a denial of procedural
due process, just makes no sense.
 Indeed, Massachusetts law created not only the means for
a swift undoing of Marotta's alleged mischief, but probably a
damage remedy as well. In this state, public employees have no
immunity from claims based on intentional (not negligent) torts. 
See Mass. Gen. Laws ch. 258, 10(c) (1998); Breault v. Chairman of
the Bd. of Fire Comm'rs., 513 N.E.2d 1277, 1282-1284 (Mass. 1987). 
Here, there is some reason to think that on his version of the
facts Herwins has, or at least had, a state damage remedy against
Marotta.
 Accordingly, we conclude that a verdict should have been
directed on count I. Count II merely reasserts that the lack of
notice to Herwins in the letter of his right to seek further
administrative review is an independent constitutional violation;
and what we have already said confirms that the district judge
properly dismissed that claim. Since both counts fail, the
remaining arguments of parties as to damages, trial errors and
attorney's fees for Herwins become moot.
 The judgment of the district court on count I is reversed
and the award of attorney's fees and costs is vacated and the
judgment on count II is affirmed.
 It is so ordered.